## BUCK *v.* BELL, SUPERINTENDENT.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE
OF VIRGINIA.

No. 292. Argued April 22, 1927.—Decided May 2, 1927.

1. The Virginia statute providing for the sexual sterilization of inmates of institutions supported by the State who shall be found to be afflicted with an hereditary form of insanity or imbecility, is within the power of the State under the Fourteenth Amendment. P. 207.
2. Failure to extend the provision to persons outside the institutions named does not render it obnoxious to the Equal Protection Clause. P. 208.

143 Va. 310, affirmed.

ERROR to a judgment of the Supreme Court of Appeals of the State of Virginia which affirmed a judgment order-

ing the Superintendent of the State Colony of Epileptics and Feeble Minded to perform the operation of salpingectomy on Carrie Buck, the plaintiff in error.

*Mr. I. P. Whitehead* for plaintiff in error.

The plaintiff in error contends that the operation of salpingectomy, as provided for in the Act of Assembly, is illegal in that it violates her constitutional right of bodily integrity and is therefore repugnant to the due process of law clause of the Fourteenth Amendment. In *Munn* v. *Illinois,* 94 U. S. 143, this Court, in defining the meaning of " deprivation of life," said: " The inhibition against its deprivation extends to all those limbs and faculties by which life is enjoyed. The deprivation not only of life but whatever God has given to everyone with life . . . is protected by the provision in question." The operation of salpingectomy clearly comes within the definition. It is a surgical operation consisting of the opening of the abdominal cavity and the cutting of the Fallopian tubes with the result that sterility is produced. It is true the Act of Assembly does provide for a hearing before the sterilization operation can be performed, and that that hearing may be in a court of law in case of appeal, but this fact standing alone does not meet the constitutional requirement of due process of law.

In determining whether the constitutional requirement has been observed we must look to the substance rather than the form of the law. *Chicago R. Co.* v. *Chicago,* 166 U. S. 226; *Simmons* v. *Craft,* 182 U. S. 427; for form of the procedure cannot convert the process used into due process of law, if the result is to illegally deprive a citizen of some constitutional right. *Chicago R. Co.* v. *Chicago, supra.* Neither can the State make a proceeding due process of law by declaring it to be such. If this were not so, there could be no restraint on the power of the legislature. *Murry* v. *Hoboken L. & I. Co.,* 18 How. 272;

*Hurtado* v. *California,* 110 U. S. 516. The test of due process of law is that the proceedings shall be legal, preserving the liberty of the citizen. The inherent right of mankind to go through life without mutilation of organs of generation needs no constitutional declaration.

The Act denies to the plaintiff and other inmates of the state colony for epileptics and feeble minded. the equal protection of the laws guaranteed by the Fourteenth Amendment. "The mere fact of classification is. not sufficient to relieve a statute of the reach of the equality clause." *Gulf, Colo. R. R. Co.* v. *Ellis,* 165. U. S. 150; and the classification must be based upon some reasonable grounds in the light of the purpose sought to. be attained by the legislature and must not be an arbitrary selection.

The object of the Act is to prevent the reproduction of mentally defective people. "The legislature cannot take what might be termed a natural class of persons, split this class in two and then arbitrarily designate the dissevered factions of the original unit as two classes and thereupon enact different rules for the government of each." *State* v. *Juldw,* 129 Mo. 163; *State* v. *Walsh,* 136 Mo. 400; *Alexander* v. *Elizabeth,* 56 N. J. L. 71; *Haynes* v. *Lapeer,* 201 Mich. 138; *Smith* v. *Command,* 231 Mich. 409; *Smith* v. *Bd. of Examiners,* 85 N. J. L. 46.

If this Act be a valid enactment, then the limits of the power of the State (which in the end is nothing more than the faction in control of the government) to rid itself of those citizens deemed undesirable according to its standards, by means of surgical sterilization, have not been set. We will have "established in the State the science of medicine and a corresponding system of judicature." A reign of doctors will be inaugurated and in the name of science new classes will be added, even races may be brought within the scope of such regulation, and the worst forms of tyranny practiced. In the place of the constitu-

tional government of the fathers we shall have set up
Plato's Republic.

*Mr. Aubrey E. Strode* for defendant in error.

The act does not impose cruel and unusual punishment.
A constitutional provision prohibiting the infliction of
cruel and unusual punishment is directed against punish-
ment of a barbarous character, involving torture, such as
drawing and quartering the culprit, burning at the stake,
cutting off the nose, ears or limbs, and the like, and such
punishments as were regarded as cruel and unusual at the
time the Constitution was adopted. *Hart* v. *Common-
wealth,* 131 Va. 741; *In re Kemmler,* 136 U. S. 436; *Collins*
v. *Johnson,* 237 U. S. 509; *Weems* v. *United States,* 217
U. S. 349. In *State* v. *Felin,* 70 Wash. 65, which was a
criminal case, it was expressly held that an asexualization
operation, vasectomy in that case, was not a cruel punish-
ment. This Court held in the *Weems Case, supra,* that
the provision of the federal Constitution (Amendment
VIII) does not apply to state legislatures.

The Act affords due process of law. *Commission* v.
*Hampton Co.,* 109 Va. 565; *Mallory* v. *Va. Colony for
Feeble Minded,* 123 Va. 205; *Anthony* v. *Commonwealth,*
142 Va. 577. The Act is a valid exercise of the
police power. The courts generally are indisposed to
suffer the police power to be impaired or defeated by
constitutional limitations. *Barbier* v. *Connolly,* 113 U. S.
27; *Shenandoah Lime Co.* v. *Governor,* 115 Va. 875. Sec-
tion 159 of the Constitution of Virginia provides that " the
exercise of the police power of the State shall never be
abridged." An exercise of the police power analogous to
that of the statute here in question may be found in the
compulsory vaccination statutes; for there, as here, a sur-
gical operation is required for the protection of the indi-
vidual and of society; and that requirement has been
upheld when imposed upon school children only, those at-

tending public institutions of learning, though not imposed upon the public as a whole. *Jacobson* v. *Massachusetts,* 197 U. S. 11; *Viemester* v. *White,* 179 N. Y. 235. The State may and does confine the feeble minded, thus depriving them of their liberty. When so confined they are by segregation prohibited from procreation—a further deprivation of liberty that goes unquestioned. The appellant is under the Virginia statutes already by law prohibited from procreation. The precise question therefore is whether the State, in its judgment of what is best for appellant and for society, may through the medium of the operation provided for by the sterilization statute restore her to the liberty, freedom and happiness which thereafter she might safely be allowed to find outside of institutional walls. No legal reason appears why a person of full age and sound mind, and even though free from any disease making such operation advisable or necessary, may not by consent have the operation performed for the sole purpose of becoming sterile, thus voluntarily giving up the capacity to procreate. The operation therefore is not legally *malum in se.* It can only be illegal when performed against the will or contrary to the interest of the patient. Who then is to consent or decide for this appellant whether it be best for her to have this operation? She cannot determine the matter for herself both because being not of full age her judgment is not to be accepted nor would it acquit the surgeon, and because she is further incapacitated by congenital mental defect.

The statute is part of a general plan applicable to all feeble-minded. It may be sustained as based upon a reasonable classification. In Virginia, marriage with the very class here involved, viz., feeble-minded inmates of state institutions, is prohibited, and its consummation visited with heavy penalties of the law. In Wisconsin, a statute requiring male applicants for marriage to file a physician's certificate of freedom from disease

was sustained in *Peterson* v. *Widule,* 157 Wis. 641.   See also *Maynard* v. *Hill,* 125 U. S. 190.   The validity of a statute prohibiting the marriage of epileptics was sustained in *Gould* v. *Gould,* 78 Conn. 242.   See *Kinney* v. *Conn,* 30 Grat. 858; *Smith* v. *Board,* 85 N. J. L. 46, distinguished and criticized.

Mr. JUSTICE HOLMES delivered the opinion of the Court.

This is a writ of error to review a judgment of the Supreme Court of Appeals of the State of Virginia, affirming a judgment of the Circuit Court of Amherst County, by which the defendant in error, the superintendent of the State Colony for Epileptics and Feeble Minded, was ordered to perform the operation of salpingectomy upon Carrie Buck, the plaintiff in error, for the purpose of making her sterile.   143 Va. 310.   The case comes here upon the contention that the statute authorizing the judgment is void under the Fourteenth Amendment as denying to the plaintiff in error due process of law and the equal protection of the laws.

Carrie Buck is a feeble minded white woman who was committed to the State Colony above mentioned in due form.   She is the daughter of a feeble minded mother in the same institution, and the mother of an illegitimate feeble minded child.   She was eighteen years old at the time of the trial of her case in the Circuit Court, in the latter part of 1924.   An Act of Virginia, approved March 20, 1924, recites that the health of the patient and the welfare of society may be promoted in certain cases by the sterilization of mental defectives, under careful safeguard, &c.; that the sterilization may be effected in males by vasectomy and in females by salpingectomy, without serious pain or substantial danger to life; that the Commonwealth is supporting in various institutions many defective persons who if now discharged would become

a menace but if incapable of procreating might be discharged with safety and become self-supporting with benefit to themselves and to society; and that experience has shown that heredity plays an important part in the transmission of insanity, imbecility, &c. The statute then enacts that whenever the superintendent of certain institutions including the above named State Colony shall be of opinion that it is for the best interests of the patients and of society that an inmate under his care should be sexually sterilized, he may have the operation performed upon any patient afflicted with hereditary forms of insanity, imbecility, &c., on complying with the very careful provisions by which the act protects the patients from possible abuse.

The superintendent first presents a petition to the special board of directors of his hospital or colony, stating the facts and the grounds for his opinion, verified by affidavit. Notice of the petition and of the time and place of the hearing in the institution is to be served upon the inmate, and also upon his guardian, and if there is no guardian the superintendent is to apply to the Circuit Court of the County to appoint one. If the inmate is a minor notice also is to be given to his parents if any with a copy of the petition. The board is to see to it that the inmate may attend the hearings if desired by him or his guardian. The evidence is all to be reduced to writing, and after the board has made its order for or against the operation, the superintendent, or the inmate, or his guardian, may appeal to the Circuit Court of the County. The Circuit Court may consider the record of the board and the evidence before it and such other admissible evidence as may be offered, and may affirm, revise, or reverse the order of the board and enter such order as it deems just. Finally any party may apply to the Supreme Court of Appeals, which, if it grants the appeal, is to hear the case upon the record of the trial

in the Circuit Court and may enter such order as it thinks the Circuit Court should have entered. There can be no doubt that so far as procedure is concerned the rights of the patient are most carefully considered, and as every step in this case was taken in scrupulous compliance with the statute and after months of observation, there is no doubt that in that respect the plaintiff in error has had due process of law.

The attack is not upon the procedure but upon the substantive law. It seems to be contended that in no circumstances could such an order be justified. It certainly is contended that the order cannot be justified upon the existing grounds. The judgment finds the facts that have been recited and that Carrie Buck " is the probable potential parent of socially inadequate offspring, likewise afflicted, that she may be sexually sterilized without detriment to her general health and that her welfare and that of society will be promoted by her sterilization," and thereupon makes the order. In view of the general declarations of the legislature and the specific findings of the Court, obviously we cannot say as matter of law that the grounds do not exist, and if they exist they justify the result. We have seen more than once that the public welfare may call upon the best citizens for their lives. It would be strange if it could not call upon those who already sap the strength of the State for these lesser sacrifices, often not felt to be such by those concerned, in order to prevent our being swamped with incompetence. It is better for all the world, if instead of waiting to execute degenerate offspring for crime, or to let them starve for their imbecility, society can prevent those who are manifestly unfit from continuing their kind. The principle that sustains compulsory vaccination is broad enough to cover cutting the Fallopian tubes. *Jacobson v. Massachusetts*, 197 U. S. 11. Three generations of imbeciles are enough.

But, it is said, however it might be if this reasoning were applied generally, it fails when it is confined to the small number who are in the institutions named and is not applied to the multitudes outside. It is the usual last resort of constitutional arguments to point out shortcomings of this sort. But the answer is that the law does all that is needed when it does all that it can, indicates a policy, applies it to all within the lines, and seeks to bring within the lines all similarly situated so far and so fast as its means allow. Of course so far as the operations enable those who otherwise must be kept confined to be returned to the world, and thus open the asylum to others, the equality aimed at will be more nearly reached.

*Judgment affirmed.*

MR. JUSTICE BUTLER dissents.