## STATE v. J. F. MORRISON.

(Filed 20 May, 1936.)

1. **Criminal Law A c—Statute imposing no penalty and failing to provide that noncompliance should be unlawful, held not criminal statute.**

   A statute prescribing that persons engaged in a certain business should obtain a license from the Commissioner of Revenue, but which does not provide that failure to comply with its provisions should be a misdemeanor, nor impose any penalties, and which is separate and distinct from the general Revenue Act, is not a criminal statute, and a person refusing to comply with its provisions cannot be charged with crime.

2. **Statutes A d—Statute prescribing license for certain dealers in scrap tobacco held void for uncertainty.**

   Ch. 360, Public Laws of 1935, prescribing that certain classes of persons dealing in scrap tobacco should first procure a license from the Commissioner of Revenue, *is held* void for uncertainty, the statute failing to stipulate the time when the license prescribed should be paid and failing to prescribe for how long a time the license should run.

APPEAL by the State from *Daniels, Emergency Judge,* at March Special Term, 1936, of ROBESON. No error.

The defendant was charged with a criminal offense, under the following warrant:

"STATE OF NORTH CAROLINA—ROBESON COUNTY.

"W. B. Parham, being duly sworn, complains and says that at and in said county, Lumberton Township, on or about the . .... day of September, 1935, J. F. Morrison did unlawfully and willfully engage in the business of buying and/or selling scrap tobacco, without applying to the Commissioner of Revenue of North Carolina for a license to engage in such business, and stating in application the place and purpose of business and counties or county in which he intended to do business, and without paying the license tax, provided by law, and did engage in business of purchasing such scrap tobacco from those other than the landlords who, or on whose property the said tobacco was grown and from places other than on the warehouse floors, contrary to the form of the statute and against the peace and dignity of the State.

                                          W. B. PARHAM.

"Sworn to and subscribed before me, this the 2d day of October, 1935.
                              JAMES R. NANCE, *Solicitor.*"

"Defendant makes motion to quash indictment on grounds that it fails to charge a crime. After a hearing on the matter, the motion is granted

and the bill is quashed. Notice of appeal from the judgment is given by the State.                                        JOHN G. PROCTOR,
                                           *Recorder Lumberton District."*

The State appealed to the Superior Court. The jury, on the trial in the court below, rendered a special verdict, as follows:

"We, the jury, return the following special verdict, and find these facts:

"1. Defendant J. F. Morrison, residing in the town of Lumberton, North Carolina, was, at the time of this indictment, engaged in the business of purchasing tobacco, and on the 1st day of August, 1935, procured from the United States Government the following certificate, as required by the Federal law:

"'D. ............ . ................................

Certificate of Registry.
Dealer in Leaf Tobacco
Fiscal Year Ending June 30

" 'Form 282—Revised.                        For failure to
   Feb. 1926.                                register within
   Treasury Department                       the month of com-
   U. S. Internal Revenue.                   mencing business
                                             and July each
                                             year a penalty of
                                             $50.00 will be
                                             incurred.

" 'For the period 1936, commencing July 1st, 1935.

" 'Issued by the Collector.................District, State of North Carolina.

" 'To: J. F. Morrison, Lumberton, N. C.

" 'This certificate must be posted conspicuously in registrant's place of business.'

"2. Defendant J. F. Morrison did, on 1 September, 1935, in the county of Robeson, purchase scrap tobacco from a farmer without paying the State license required under chapter 360, Public Laws of 1935.

"3. At the time of this purchase of scrap tobacco by defendant, tobacco warehouses in the town of Lumberton, paying license tax under section 142 of the Revenue Act of 1935, were engaged in the purchase and sale of scrap tobacco and were not required to pay such tax, because in the purchase and sale of such tobacco said warehouse at all times complied with the provisions of chapter 360, Public Laws of 1935, as well as with section 142 of Revenue Act of 1935, and therefore did not pay the $1,000.00 license tax.

"If, upon this special verdict and findings, the court is of the opinion that defendant is guilty, we find him guilty. If the court is of the opinion that he is not guilty, we find him not guilty. Thereupon, the court finds defendant not guilty. F. A. Daniels, Judge presiding."

*Judgment:* "Upon the special verdict returned into court, after argument of counsel for the State and the defendant, the court adjudges the defendant not guilty. It is ordered that the defendant be discharged. By consent, argument heard and judgment rendered at Chambers, out of term. 21 April, 1936.　　　　F. A. DANIELS,
*Judge Presiding."*

The State excepted and assigned error to the foregoing judgment, and appealed to the Supreme Court.

*Attorney-General Seawell and Assistant Attorney-General Bruton for the State.*

*W. E. Timberlake, J. B. Eure, and McLean & Stacy for defendant.*

CLARKSON, J. The defendant is charged with the crime of violating chapter 360, Public Laws 1935. Section 1 is as follows: "Every person, firm, or corporation engaging in the business of buying or selling scrap tobacco shall apply to the Commissioner of Revenue of North Carolina for license to engage in such business, and such applicant shall state the counties in which the said person, firm, or corporation proposes to do business, and the place where the principal office of the applicant or warehouse of the applicant is situated, and shall pay to the said Commissioner of Revenue for the benefit of the State a license tax of one thousand ($1,000.00) dollars for each and every county in which the applicant proposes to do business: *Provided,* this shall not apply to scrap tobacco sold on floors of warehouses paying a license tax under section one hundred and forty-two of the Revenue Act of one thousand nine hundred and thirty-five, or to tobacco scrapped by reason of processing by a manufacturer or processor of tobacco: *Provided,* this shall not apply to any person, firm, or corporation regularly engaged in the business of buying, selling, or processing leaf tobacco and properly licensed therefor: *Provided,* scrap tobacco bought by such person, firm, or corporation is delivered by the landlord thereof to the place of business of such purchaser." Section 2 provides that on or before 10th of each month report to be made to Commissioner of Revenue. Sec. 3 provides for display of license.

The defendant sets forth many contentions why the act should be declared unconstitutional, inoperative, and void, one of which is as follows: "For that the defendant has committed no offense under the pro-

visions of chapter 360, Public Laws of 1935, for the statute fixes no time when the license is required to be paid, nor how long the license shall run, and is, therefore void for uncertainty."

In "An Act to Raise Revenue," ch. 371, Public Laws of N. C., 1935, the failure to comply with the provisions of that act is made a misdemeanor, and also in certain cases penalties are imposed. The present act is a separate and distinct act and the noncompliance· is not made unlawful or a crime. Therefore, no crime can be charged against the defendant.

In *S. v. Pierce,* 123 N. C., 745 (747), it is said: "Indeed, the doctrine is well settled that where the statute either makes an act unlawful or imposes a punishment for its commission, such act becomes a crime without any express declaration that it shall be a crime or of its grade. In the former case it is a misdemeanor, and in the latter a felony or a misdemeanor, according to the nature of the punishment prescribed."

We think the act is also void for uncertainty and vagueness—it is so loosely and obscurely drawn as to be incapable of enforcement, and therefore void for uncertainty.

Speaking to the question, in *Drake v. Drake,* 15 N. C., 110, *Chief Justice Ruffin,* delivering the opinion of the Court, said: "Whether a statute be a public or private one, if the terms in which it is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative. The law must remain as it was, unless that which professes to change it be itself intelligible."

In *S. v. Parllow,* 91 N. C., 550 (553), we find: " 'A statute must be capable of construction and interpretation; otherwise, it will be inoperative and void. The court must use every authorized means to ascertain and give it an intelligent meaning; but if, after such effort, it is found to be impossible to solve the doubt and dispel the obscurity, if no judicial certainty can be settled upon as to the meaning, the court is not at liberty to supply—to make one. The court may not allow "conjectural interpretation to usurp the place of judicial exposition." There must be a competent and efficient expression of the legislative will.' "

Not only is this the law in North Carolina, it is also the law in other jurisdictions, the general rule being stated in Re. Di. Torio, 8 F. (2d), 279, as follows: "An act which is so uncertain that its meaning cannot be determined by any known rules of construction cannot be enforced. If no judicial certainty can be settled upon as to the meaning of a statute, the courts are not at liberty to supply one. It must be capable of construction and an interpretation; otherwise, it will be inoperative and void. An act is void where its language appears on its face to have a

meaning, but it is impossible to give it any precise or intelligible application in the circumstances under which it is intended to operate."

The general rule is well stated in 25 R. C. L., 810: "When an act of the Legislature is so vague, indefinite, and uncertain that the courts are unable to determine with any reasonable degree of certainty what the Legislature intended, or is so incomplete, or is so conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative and void." *Stacy, C. J.,* in *Boyd v. Brooks,* 197 N. C., 655.

In *S. v. Gooding,* 194 N. C., 271 (273), it is declared: "Again, in *Yu Cong Eng v. Trinidad,* 271 U. S., 500, *Chief Justice Taft,* speaking to the constitutionality of an act of the Philippine Legislature, which undertook to prohibit any person, firm, or corporation, engaged in commerce or other activity for profit in the Philippine Islands, from keeping its account books in any language other than English, Spanish, or some local dialect, said 'that a statute which requires the doing of an act so indefinitely described that men must guess at its meaning, violates due process of law.'"

For the reasons given, we find in the judgment of the court below
No error.