IN RE: JOSEPH LEE MOORE

No. 72

(Filed 29 January 1976)

1. **Constitutional Law §§ 21, 24— sterilization laws — due process — payment for medical expert**
    Statutes authorizing the sterilization of mentally ill or mentally retarded persons, G.S. 35-36 through G.S. 35-50, are not unconstitutional in failing to require the State to pay a medical expert on behalf of the respondent since G.S. 7A-454 allows the court in its discretion to approve a fee for the services of an expert witness who testifies for an indigent person, and no constitutional mandate requires more.

2. **Constitutional Law §§ 21, 24— sterilization laws — due process — cross-examination**
    The statutes authorizing the sterilization of mentally ill or mentally retarded persons do not unconstitutionally deny respondent the right of cross-examination since that right is specifically provided by G.S. 35-43, the only requirement to assure such right is that the respondent, his guardian, attorney or some other interested party object in writing to the sterilization, and this requirement is not unduly burdensome because respondent is represented at every stage of the proceeding.

3. **Constitutional Law § 21— sterilization laws — procedural due process**

   Statutes authorizing the sterilization of mentally ill or mentally retarded persons, G.S. 35-36 through G.S. 35-50, meet procedural due process requirements.

4. **Constitutional Law §§ 14, 21— sterilization laws — valid exercise of police power**

   The sterilization of mentally ill or retarded persons under the safeguards as set out in G.S. 35-36 through G.S. 35-50 is a valid and reasonable exercise of the police power since the State has a compelling interest to prevent the procreaton of children by a mentally ill or retarded person who would probably be unable to care for children and the procreation of children who probably would have serious physical, mental or nervous diseases or deficiencies.

5. **Constitutional Law §§ 20, 21— sterilization laws — equal protection**

   The sterilization statutes do not violate the equal protection clauses of the United States Constitution or the North Carolina Constitution since they apply to all mentally ill or retarded persons inside or outside an institution who meet the requirements of the statutes.

6. **Constitutional Law §§ 21, 24— sterilization laws — judicial standard**

   The sterilization statutes, G.S. 35-36 through G.S. 35-50, when construed by the Court to require clear, strong and convincing evidence before a sterilization order may be entered, provide a sufficient judicial standard to guide the court in reaching a decision whether to authorize the sterilization of an individual and are not unconstitutionally vague and arbitrary.

7. **Constitutional Law §§ 21, 36— sterilization — no cruel and unusual punishment**

   The sterilization of a person pursuant to the provisions of G.S. 35-36 through G.S. 35-50 does not constitute cruel and unusual punishment since no criminal proceeding is involved.

APPEAL by the State from *McConnell, J.,* at the 28 July 1975 Civil Session, FORSYTH Superior Court, heard prior to determination by the Court of Appeals.

On 21 May 1975 a petition was filed in Forsyth County District Court by Gerald M. Thornton, Director, Forsyth County Department of Social Services, requesting that the court enter an order authorizing the sterilization of Joseph Lee Moore, a minor. The petition was accompanied by the consent of the respondent, Joseph Lee Moore, and his mother, Dora I. Moore. A psychological report included in the petition indicated that Joseph is presently functioning at a moderately retarded level of measured intelligence, with a Full Scale I.Q. of under 40 and a Test Age score of 8. The petitioner believed Joseph to be a proper subject for sterilization because it is likely that unless steril-

ized he would procreate a child or children who would probably have serious physical, mental or nervous diseases or deficiencies. The accompanying statement by the examining physician, Dr. Ruth O'Neal, found no known contraindication to the requested surgical procedure.

The respondent, through his guardian ad litem and attorney, in apt time objected to the petition and requested a hearing. This matter was heard on 29 July 1975 before A. Lincoln Sherk, J., in Forsyth District Court, Juvenile Division. The respondent filed a motion to quash and dismiss the petition, alleging that G.S. 35-36, *et seq.*, was unconstitutional. This motion was allowed and notice of appeal was given by the State to Forsyth Superior Court.

The matter was heard *de novo* before McConnell, J., at the 28 July 1975 Civil Session of Forsyth Superior Court. The respondent again made his motions to quash or dismiss the petition. Judge McConnell allowed the motion, finding G.S. 35-36 through G.S. 35-50, inclusive, unconstitutional. The District Attorney for the Twenty-First Judicial District excepted to the judgment and for the State gave notice of appeal to the Court of Appeals. The respondent petitioned the Supreme Court to hear this matter prior to determination by the Court of Appeals. This petition was allowed on 27 August 1975.

*Attorney General Rufus L. Edmisten by Associate Attorney Isaac T. Avery, III, for the State, petitioner appellant.*

*Hatfield and Allman by James W. Armentrout for respondent appellee.*

*Smith, Patterson, Follin, Curtis & James by Norman B. Smith for North Carolina Civil Liberties Union Legal Foundation, Inc., amicus curiae, for respondent appellee.*

MOORE, Justice.

The only question before us on this appeal is the constitutionality of G.S. 35-36 through G.S. 35-50, inclusive.

The respondent attacks these statutes on the grounds that they are violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Law of the Land Clause of Article I, Section 19, of the North Carolina Constitution, both from procedural and substantive standpoints,

that they deny the respondent equal protection of the law, are unconstitutionally vague and arbitrary, and provide for cruel and unusual punishment. The term "law of the land" as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with "due process of law" as used in the Fourteenth Amendment to the Federal Constitution. *Surplus Store, Inc. v. Hunter,* 257 N.C. 206, 125 S.E. 2d 764 (1962).

The right of a state to sterilize retarded or insane persons was first upheld by the United States Supreme Court in *Buck v. Bell,* 274 U.S. 200, 71 L.Ed. 1000, 47 S.Ct. 584 (1927). In that case, in upholding a Virginia sterilization law, the Court held that the state may provide for the sterilization of a feeble-minded inmate of a state institution where it is found that she is the probable potential parent of a socially inadequate offspring likewise afflicted, and that she may be sterilized without detriment to her general health, and that her welfare and that of society will be promoted by her sterilization. Since *Buck,* many states have passed sterilization laws. *See* Validity of Statutes Authorizing Asexualization or Sterilization of Criminals or Mental Defectives, Annot., 53 A.L.R. 3d 960 (1973).

Most of these statutes have been declared constitutional. The grounds for declaring some of the statutes unconstitutional were lack of notice and a hearing, *In re Hendrickson,* 12 Wash. 2d 600, 123 P. 2d 322 (1942), *In re Opinion of the Justices,* 230 Ala. 543, 162 So. 123 (1935), *Williams v. Smith,* 190 Ind. 526, 131 N.E. 2 (1921); equal protection because limited to those imprisoned or committed, *Haynes v. Lapeer, Circuit Judge,* 201 Mich. 138, 166 N.W. 938 (1918), *Smith v. Board of Examiners of Feeble-Minded,* 85 N.J.L. 46, 88 A. 963 (1913), *In re Thomson,* 103 Misc. 23, 169 N.Y.S. 638, *aff'd,* 185 App. Div. 902, 171 N.Y.S. 1094 (1918), *Skinner v. Oklahoma,* 316 U.S. 535, 86 L.Ed. 1655, 62 S.Ct. 1110 (1942); or cruel and unusual punishment, *Davis v. Berry,* 216 F. 413 (S.D. Iowa 1914), *rev'd on other grounds,* 242 U.S. 468, 61 L.Ed. 441, 37 S.Ct. 208 (1917).

Our research does not disclose any case which holds that a state does not have the right to sterilize an insane or a retarded person if notice and hearing are provided, if it is applied equally to all persons, and if it is not prescribed as a punishment for a crime.

Respondent contends, however, that not all the requirements of procedural due process have been met in this case. A

former sterilization statute was held unconstitutional by this Court on procedural grounds, specifically that notice and a hearing were not provided. *See Brewer v. Valk,* 204 N.C. 186, 167 S.E. 638 (1933). The present statute, effective 1 January 1975, sought to correct the defects found in the former statute. G.S. 35-36 and G.S. 35-37 both provide that "no operation authorized in this section shall be lawful unless and until the provisions of this Article shall first be complied with." G.S. 35-41 provides that at least twenty days prior to a hearing on the petition in the district court, a copy of such petition must be served on the resident of the institution, patient, or non-institutional individual and on the legal or natural guardian, guardian ad litem, or next of kin of the resident of the institution, patient or noninstitutional individual. G.S. 35-44 provides for a hearing, if requested, before the judge of the district court. G.S. 35-44 also provides for an appeal from the judgment of the district court to the superior court for a trial *de novo* with the right upon the application of either party to be heard before a jury and the further right of appeal to the appellate courts for judicial review.

G.S. 35-45 provides:

"The person alleged to be subject to the provisions of this section shall have the right to counsel at all stages of the proceedings provided for herein. This person and all others served with the notification provided for in G.S. 35-41 shall be fully informed of the person's entitlement to counsel at the time of this service of notice. This information shall be given in language and in a manner calculated to insure, insofar as such is possible in view of the individual's capability to comprehend it, that the recipient understands the entitlement. Every person subject to be sterilized under this Article after the filing of the petition shall have counsel at every stage of the proceedings. If there is a conflict between the election of the person concerned and that of the other persons being served with notice, determination of the question of representation by counsel shall be made by the court having jurisdiction of the case. The person concerned may, in any instance, be represented by counsel retained by him. In cases of claimed indigency, a request for counsel shall be processed in the manner provided for in Subchapter IX, Chapter 7A, General Statutes of North Carolina."

[1]  Despite the above specified safeguards, respondent still asserts that two important procedural rights have been omitted: (1) a provision that the State will provide the funds necessary to obtain a medical expert on behalf of the respondent and (2) the right of cross-examination. It is true that this statute does not require the State to pay a medical expert on behalf of the respondent. However, G.S. 7A-454 allows the court in its discretion to approve a fee for the services of an expert witness who testifies for an indigent person. We know of no constitutional mandate that requires more. *See generally* "Right of Indigent Defendant in Criminal Case to Aid of State by Appointment of Investigator or Expert," Annot., 34 A.L.R. 3d 1256 (1970). *Accord, Smith v. Baldi,* 344 U.S. 561, 97 L.Ed. 549, 73 S.Ct. 391 (1953); *Watson v. Patterson,* 358 F. 2d 297 (10th Cir. 1966); *United States ex rel. Huguley v. Martin,* 325 F. Supp. 489 (N.D. Ga. 1971); *Knapp v. Hardy,* 111 Ariz. 107, 523 P. 2d 1308 (1974); *State v. Bourne,* 283 So. 2d 233 (La. 1973); *Utsler v. State,* 84 S.D. 360, 171 N.W. 2d 739 (1969); *Utsler v. Erickson,* 315 F. Supp. 480 (D.S.D. 1970), *aff'd,* 440 F. 2d 140 (8th Cir. 1971), *cert. den.,* 404 U.S. 956, 30 L.Ed. 2d 272, 92 S.Ct. 319 (1971); *San Miguel v. McCarthy,* 8 Ariz. App. 323, 446 P. 2d 22 (1968); *Houghtaling v. Commonwealth,* 209 Va. 309, 163 S.E. 2d 560 (1968), *cert. den.,* 394 U.S. 1021, 23 L.Ed. 2d 46, 89 S.Ct. 1642 (1969). As aptly stated by the Supreme Court of Arizona in *State v. Crose,* 88 Ariz. 389, 357 P. 2d 136 (1960):

" . . . [D]efendant contends that the right to have medical experts appointed by the court, at the state's expense, to examine him and assist his defense, is an integral and essential part of his constitutionally-guaranteed right to counsel. He has cited us no authority to support that position, and our own independent investigation has disclosed none. That he has the right to counsel . . . is not in doubt. . . . We know of nothing, however, either by constitution or by statute, requiring the state at its own expense to make available to the defendant, in addition to counsel, the full paraphernalia of defense. . . . We have no doubt that those who make the law could appropriately provide impecunious defendants with such assistance as was sought here, were it deemed practicable and in the public interest to do so. They have not done so. They were under no constitutional compulsion to do so. . . . "

In re Moore

**[2]** The right of cross-examination is specifically provided by G.S. 35-43: "In the event a hearing is requested, the district attorney . . . shall present the evidence for the petitioner. *The respondent shall be entitled to examine the petitioner's witnesses and shall be entitled to present evidence in his own behalf.*" (Emphasis added.) In order to assure this right, the only requirement is that the respondent, his guardian, attorney or other interested party object in writing to the sterilization. Since respondent is represented at every stage of the proceeding, we do not think this requirement is unduly burdensome.

**[3]** We hold that the provisions of this statute far exceed the minimum requirements of procedural due process. *Buck v. Bell, supra; Hagins v. Redevelopment Comm.,* 275 N.C. 90, 165 S.E. 2d 490 (1969); *In re Custody of Gupton,* 238 N.C. 303, 77 S.E. 2d 716 (1953); *Brewer v. Valk, supra.*

Respondent further contends that the statutes in question deny him substantive due process. "Due process" has a dual significance, as it pertains to procedure and substantive law. As to procedure, it means notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a competent and impartial tribunal having jurisdiction of the cause. *State v. Smith,* 265 N.C. 173, 143 S.E. 2d 293 (1965). In substantive law, due process may be characterized as a standard of reasonableness and as such it is a limitation upon the exercise of the police power. "Undoubtedly, the State possesses the police power in its capacity as a sovereign, and in the exercise thereof, the Legislature may enact laws, within constitutional limits, to protect or promote the health, morals, order, safety, and general welfare of society. [Citations omitted.]" *State v. Ballance,* 229 N.C. 764, 769, 51 S.E. 2d 731, 734 (1949). " . . . 'If a statute is to be sustained as a legitimate exercise of the police power, it must have a rational, real, or substantial relation to the public health, morals, order, or safety, or the general welfare.' . . . " *Surplus Store, Inc. v. Hunter, supra,* at 210, 125 S.E. 2d at 767; *State v. Brown* and *State v. Narron,* 250 N.C. 54, 108 S.E. 2d 74 (1959); *Roller v. Allen,* 245 N.C. 516, 96 S.E. 2d 851 (1957); *State v. Ballance, supra; State v. Whitaker,* 228 N.C. 352, 45 S.E. 2d 860 (1947), *aff'd,* 335 U.S. 525, 93 L.Ed. 212, 69 S.Ct. 251 (1949).

The traditional substantive due process test has been that a statute must have a rational relation to a valid state objective. In a growing series of decisions, the United States Supreme

Court has recognized a right of privacy emanating from the Fourteenth Amendment's concept of personal liberty or encompassed within the penumbra of the Bill of Rights that includes the abortion decision, *Roe v. Wade,* 410 U.S. 113, 35 L.Ed. 2d 147, 93 S.Ct. 705 (1973); certain marital activities, *Loving v. Virginia,* 388 U.S. 1, 18 L.Ed. 2d 1010, 87 S.Ct. 1817 (1967), and *Griswold v. Connecticut,* 381 U.S. 479, 14 L.Ed. 2d 510, 85 S.Ct. 1678 (1964); and procreation, *Eisenstadt v. Baird,* 405 U.S. 438, 31 L.Ed. 2d 349, 92 S.Ct. 1029 (1972), and *Skinner v. Oklahoma, supra.* In Eisenstadt, the Court specifically recognized " . . . the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. . . . " However, in *Roe v. Wade, supra,* 410 U.S. at 154-55, Mr. Justice Blackmun, speaking for the Court, said:

" . . . The Court's decisions recognizing a right of privacy also acknowledge that some state regulation in areas protected by that right is appropriate. As noted above, a State may properly assert important interests in safeguarding health, in maintaining medical standards, and in protecting potential life. . . .

"We, therefore, conclude that the right of personal privacy . . . is not unqualified and must be considered against important state interests in regulation.

\*    \*    \*

"Where certain 'fundamental rights' are involved, the Court has held that regulation limiting these rights may be justified only by a 'compelling state interest,' [citations omitted], and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake. [Citations omitted.]"

The right to procreate is not absolute but is vulnerable to a certain degree of state regulation. *Roe v. Wade, supra; Buck v. Bell, supra.* The two state interests recognized as paramount to the individual's freedom of choice in *Roe v. Wade, supra,* at least after the first trimester of pregnancy, were the state's concern with the health of the mother and the potential life of the child. The welfare of the parent and the future life and health of the unborn child are also the chief concerns of the

State of North Carolina in authorizing sterilizaiton of individuals under certain circumstances.

The interest of the unborn child is sufficient to warrant sterilization of a retarded individual. "The state's concern for the welfare of its citizenry extends to future generations and when there is overwhelming evidence . . . that a potential parent will be unable to provide a proper environment for a child because of his own mental illness or mental retardation, the state has sufficient interest to order sterilization." *Cook v. State,* 9 Or. App. 224, 495 P. 2d 768 (1972). The people of North Carolina also have a right to prevent the procreation of children who will become a burden on the State.

> "It can hardly be disputed that the right of a woman to bear and the right of a man to beget children is a natural and constitutional right, nor can it be successfully disputed that no citizen has any rights that are superior to the common welfare. Acting for the public good, the state, in the exercise of its police power, may impose reasonable restrictions upon the natural and constitutional rights of its citizens. Measured by its injurious effect upon society, the state may limit a class of citizens in its right to bear or beget children with an inherited tendency to mental deficiency, including feeblemindedness, idiocy, or imbecility. It is the function of the Legislature, and its duty as well, to enact appropriate legislation to protect the public and preserve the race from the known effects of the procreation of mentally deficient children by the mentally deficient. . . . " *In re Cavitt,* 182 Neb. 712, 157 N.W. 2d 171 (1968).

The United States Supreme Court has also held that the welfare of all citizens should take precedence over the rights of individuals to procreate. In *Buck v. Bell, supra,* the Court said: " . . . It is better for all the world, if instead of waiting to execute degenerate offspring for crime, or to let them starve for their imbecility, society can prevent those who are manifestly unfit from continuing their kind. The principle that sustains compulsory vaccination is broad enough to cover cutting the Fallopian tubes. *Jacobson v. Massachusetts,* 197 U.S. 11, 49 L.ed. 643, 25 Sup. Ct. Rep. 358, 3 Ann. Cas. 765. . . ."

Furthermore, the sterilization of a mentally ill or retarded individual at certain times may be in the best interest of that

individual. The mentally ill or retarded individual may not be capable of determining his inability to cope with children. In addition, he may be capable of functioning in society and caring for his own needs but may be unable to handle the additional responsibility of children. This individual also may not be able to practice other forms of birth control and therefore sterilization is the only available remedy. Sterilization itself does not prevent the normal sex drive of the person, it only prevents procreation. Therefore, the State may only be providing for the welfare of the individual when this individual is unable to do so for himself.

[4] We hold that the sterilization of mentally ill or retarded persons under the safeguards as set out in G.S. 35-36 through G.S. 35-50, inclusive, is a valid and reasonable exercise of the police power, see *Buck v. Bell, supra; Brewer v. Valk, supra,* and that these state interests rise to the level of a compelling state interest. See *Village of Belle Terre v. Boraas,* 416 U.S. 1, 39 L.Ed. 2d 797, 94 S.Ct. 1536 (1974).

The equal protection clauses of the United States and North Carolina Constitutions impose upon lawmaking bodies the requirement that any legislative classification "be based on differences that are reasonably related to the purposes of the Act in which it is found." *Morey v. Doud,* 354 U.S. 457, 465, 1 L.Ed. 2d 1485, 1491, 77 S.Ct. 1344, 1350 (1957) ; *Reed v. Reed,* 404 U.S. 71, 30 L.Ed. 2d 225, 92 S.Ct. 251 (1971) ; *State v. Greenwood,* 280 N.C. 651, 187 S.E. 2d 8 (1972). Such classifications will be upheld provided the classification is founded upon reasonable distinctions, affects all persons similarly situated or engaged in the same business without discrimination, and has some reasonable relation to the public peace, welfare and safety. *State v Greenwood, supra; Clark's Charlotte, Inc. v. Hunter,* 261 N.C. 222, 134 S.E. 2d 364 (1964). " . . . When a special class of persons . . . is singled out by the Legislature for special treatment, there must be a reasonable relation between the classification and the object of the statute. . . . " *State v. Mems,* 281 N.C. 658, 673, 190 S.E. 2d 164, 174 (1972) ; *Quaker City Cab. Co. v. Penna.,* 277 U.S. 389, 72 L.Ed. 927, 48 S.Ct. 553 (1928) ; *Power Co. v. Saunders,* 274 U.S. 490, 71 L.Ed. 1165, 47 S.Ct. 678 (1927).

The object of G.S. 35-36 through G.S. 35-50, inclusive, is to prevent the procreation of children by a mentally ill or retarded individual who because of physical, mental or nervous disease

or deficiency which is not likely to materially improve, would probably be unable to care for a child or children or who would likely, unless sterilized, procreate a child or children who probably would have serious physical, mental or nervous diseases or deficiencies. Considering this object, the classification under these statutes is reasonable.

Sterilization laws in several states have been declared unconstitutional because they affect only a certain class of mentally ill or retarded persons. *Skinner v. Oklahoma, supra; Haynes v. Lapeer, Circuit Judge, supra; In re Thompson, supra; Smith v. Board of Examiners of Feebleminded, supra.* These cases declared laws unconstitutional when the law provided for a group of the feebleminded to be sterilized, such as those institutionalized, and for another group of feebleminded, such as those not institutionalized, not to be sterilized. G.S. 35-36 and G.S. 35-37 provide for the sterilization of all mentally ill or retarded persons inside or outside an institution who meet the requirements of these statutes. We have found no case that holds that sterilization of all mentally ill or retarded persons denies equal protection. Many cases have held otherwise. *Buck v. Bell, supra; Smith v. Command,* 231 Mich. 409, 204 N.W. 140 (1925). As said by Mr. Justice Holmes in *Buck v. Bell, supra:*

> "But, it is said, however it might be if this reasoning were applied generally, it fails when it is confined to the small number who are in the institutions named and is not applied to the multitudes outside. It is the usual last resort of constitutional arguments to point out shortcomings of this sort. But the answer is that the law does all that is needed when it does all that it can, indicates a policy, applies it to all within the lines, and seeks to bring within the lines all similarly situated so far and so fast as its means allow. Of course so far as the operations enable those who otherwise must be kept confined to be returned to the world, and thus open the asylum to others, the equality aimed at will be more nearly reached."

[5] Since the North Carolina law applies to all those named in the statute (G.S. 35-43), these statutes, G.S. 35-36 through G.S. 35-50, inclusive, do not violate the equal protection clauses of the United States Constitution or the Constitution of North Carolina.

Respondent next asserts that this legislation provides no adequate judicial standard to guide the court in reaching a

decision whether to authorize the sterilization of an individual. Respondent points to the indefiniteness of the terms found in G.S. 35-43:

> " . . . If the judge of the district court shall find from the evidence that the person alleged to be subject to this section is subject to it and that because of a physical, mental, or nervous disease or deficiency which is not *likely* to materially improve, the person would *probably* be unable to care for a child or children; or, because the person would be *likely,* unless sterilized, to procreate a child or children which *probably* would have serious physical, mental, or nervous diseases or deficiencies, he shall enter an order and judgment authorizing the physician or surgeon named in the petition to perform the operation." (Emphasis added.)

Defendant contends that these indefinite terms render the statute unconstitutionally vague and arbitrary; that there exists no standard at all, except the subjective determination of an individual judge.

It is true that a statute must be held void if it is so loosely and obscurely drawn as to be incapable of enforcement. *State v. Morrison,* 210 N.C. 117, 185 S.E. 674 (1936). But, as stated in *Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 1 (1966):

> "However, as was said in *State v. Partlow, supra* [91 N.C. 550, 49 A.R. 652 (1884)]. 'It is plainly the duty of the court to so construe a statute, ambiguous in its meaning, as to give effect to the legislative intent, if this be practicable.' It is also well established that this Court will not adjudge an act of the General Assembly unconstitutional unless it is clearly so. *Kornegay v. Goldsboro,* 180 N.C. 441, 105 S.E. 187. Where a statute is susceptible of two interpretations, one of which will render it constitutional and the other will render it unconstitutional, the former will be adopted. *City of Randleman v. Hinshaw,* 267 N.C. 136, 147 S.E. 2d 902; *Finance Co. v. Leonard,* 263 N.C. 167, 139 S.E. 2d 356; *Nesbitt v. Gill,* 227 N.C. 174, 41 S.E. 2d 646. If possible, the language of a statute will be interpreted so as to avoid an absurd consequence. *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797; *State v. Scales,* 172 N.C. 915, 90 S.E. 439. A statute is never to be construed so as to require an impossibility if that result

can be avoided by another fair and reasonable construction of its terms. *Comrs. v. Prudden,* 180 N.C. 496, 105 S.E. 7. 'A statute or amendment formally passed is presumed and if permissible should be construed so as to have some meaning.' *Mitchell v. R. R.,* 183 N.C. 162, 110 S.E. 859. See also *State v. Humphries,* 210 N.C. 406, 186 S.E. 473. . . . "

*See also State v. Miller,* 282 N.C. 633, 194 S.E. 2d 353 (1973); *Underwood v. Howland, Comr. of Motor Vehicles,* 274 N.C. 473, 164 S.E. 2d 2 (1968).

" . . . [I]mpossible standards of statutory clarity are not required by the constitution. When the language of a statute . . . prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met. *United States v. Petrillo,* 332 U.S. 1, 91 L.ed. 1877, 67 S.Ct. 1538." *In re Burrus,* 275 N.C. 517, 531, 169 S.E. 2d 879, 888 (1969).

Several recent United States Supreme Court opinions have spoken to this issue of unconstitutional vagueness or lack of any judicial standard. In *Parker v. Levy,* 417 U.S. 733, 41 L.Ed. 2d 439, 94 S.Ct. 2547 (1974), the Court upheld the statute providing for court-martial of an officer for "conduct unbecoming an officer and a gentleman," against attack that it was too vague and arbitrary, stating, " '[t]he doctrine incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement." . . . ' [Citation omitted.]" The same result was reached in *Arnett v. Kennedy,* 416 U.S. 134, 40 L.Ed. 2d 15, 94 S.Ct. 1633 (1974), where the Court sustained a statute providing for removal of nonprobationary federal employees only "for such cause as will promote the efficiency of the service." The Supreme Court has recognized that " . . . words inevitably contain germs of uncertainty and . . . there may be disputes about the meaning of such terms. . . , " but has reiterated that if they can be sufficiently understood and complied with, the statute will be upheld. *Broadrick v. Oklahoma,* 413 U.S. 601, 37 L.Ed. 2d 830, 93 S.Ct. 2908 (1973). In *Jones v. Penny,* 387 F. Supp. 383 (M.D.N.C. 1974), the court upheld a statutory procedure in North Carolina by which the Commissioner of Motor Vehicles may revoke a driver's license of a person who has been adjudged incompetent or who has been

involuntarily committed to an institution for the treatment of mental illness, alcoholism or drug addiction, "unless the Commissioner is satisfied that such person is competent to operate a motor vehicle with safety to persons or property." The court specifically recognized that the determination to be made by the Commissioner was not a subjective one but an objective one to be arrived at after careful study of the evidence in each case.

[6]   In the light of the foregoing principles, we believe that G.S. 35-36 through G.S. 35-50 meet this constitutional standard. The definitions of "mental disease," "mental illness" and "mental defective" are found in G.S. 35-1.1, the same chapter as the sterilization procedure, and are capable of being understood and complied with by the triers of fact with the help of experts in the field. It is conceded that the words "likely" and "probably" necessarily contain germs of uncertainty. However, it is the duty of the court to construe a statute, ambiguous in its meaning, so as to give effect to the legislative intent. *Hobbs v. Moore County, supra.* Here, it is clear that the General Assembly intended to provide the mentally ill and defective with sufficient safeguards to prevent misuse of this potentially dangerous procedure. The statute does not specify the burden of proof that the petitioner must meet before the order authorizing the sterilization can be entered. In keeping with the intent of the General Assembly, clearly expressed throughout the article, that the rights of the individual must be fully protected, we hold that the evidence must be clear, strong and convincing before such an order may be entered. *See McCorkle v. Beatty,* 225 N.C. 178, 33 S.E. 2d 753 (1945) ; 2 Stansbury, N. C. Evidence § 213, p. 161 (Brandis Rev. 1973). So construed, we hold that G.S. 35-36 through G.S. 35-50, inclusive, provide a sufficient judicial standard and are not unconstitutionally vague or arbitrary.

[7]   The respondent's next contention that sterilization amounts to cruel and unusual punishment is without basis in law in this case. The cruel and unusual punishment clause of the Constitution refers to those persons convicted of a crime. Since this is not a criminal proceeding, there is no basis for the cruel and unusual argument. The two cases cited in the *amicus curiae* brief, *Davis v. Berry, supra,* and *Mickle v. Henrichs,* 262 F. 687 (D. Nev. 1918), both held that sterilization of criminals as part of a sentence upon conviction was cruel and unusual punishment. That question is not presented in this case and those cases are not pertinent to decision here. *See In re Cavitt, supra;*

*State v. Troutman,* 50 Idaho 673, 299 P. 668 (1931) ; *Smith v. Command, supra.*

   This unfortunate respondent and his mother both consented to the performance of a vasectomy. While we do not attach much importance to the respondent's consent due to his mental condition, his mother unquestionably is in a position to know what is best for the future of her child. Under the provisions of G.S. 35-36 through G.S. 35-50, inclusive, the rights of respondent and the State will be fully protected at hearing.

   We hold, therefore, that the trial court erred in declaring these statutes unconstitutional. The judgment so entered is reversed.

   Reversed.