Karen McKINNEY *v.* G.A. McKINNEY

90-199                                    805 S.W.2d 66

Supreme Court of Arkansas
Opinion delivered March 11, 1991.

14

*Grif Stockely*, by: *Lynn Pence*, for appellant.

*Steve Clark*, Att'y Gen., by: *John D. Harris*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Arkansas statutory laws provide for involuntary sterilization procedures on mental incompetents. Ark. Code Ann. §§ 20-49-101 to -102, 20-49-201 to -207, and 20-49-301 to -304 (1987). Sections 20-49-201 to -207 set out one method that requires judicial oversight before such an involuntary sterilization on an incompetent can be performed. However, §§ 20-49-301 to -304 establish a second or alternative method that allows involuntary sterilization on incompetents through what is described as "direct medical channels" — a statutory procedure that provides no judicial oversight. In this law suit, appellant challenges this alternative method, claiming it violates appellant's fundamental liberty or property interests guaranteed under the 14th Amendment. *See Santosky* v. *Kramer*, 455 U.S. 745 (1982); *Matthews* v. *Eldridge*, 424 U.S. 319 (1976); *Buck* v. *Bell*, 274 U.S. 200 (1927).

The state Attorney General's office intervened in this cause, but does not argue that the alternative or "direct medical channels" procedure meets constitutional muster. In fact, the Attorney General, in a prior opinion dated April 30, 1986, indicated that this alternative sterilization method was constitutionally suspect. The state, instead, both below and on appeal, urges only that the appellant has no standing to raise the

constitutional issue she argues in this case. We disagree, and hold the appellant not only has standing, but she also is correct in her claim that §§ 20-49-301 to -304 are unconstitutional.

A brief description of the facts and the procedures leading to this appeal is necessary. Appellant, an adult, initiated this action by filing a complaint and requesting a restraining order to prohibit her father, her legal guardian, from forcing her to undergo a non-judicial or direct medical channels involuntary sterilization procedure at a local hospital. Upon giving proper notice to the state Attorney General's office, she requested the court to declare §§ 20-49-301 to -304 unconstitutional. The trial court issued a temporary restraining order against appellant's father. It also subsequently approved and entered an order whereby the parties agreed that the father should be enjoined from having any contact with the appellant or from taking any actions to secure an involuntary sterilization procedure on her person. Following this so-called agreed order, the trial court dismissed the case, stating that the parties' case had become moot and a "live controversy" was no longer presented to the court.

On appeal, the appellant, citing *Campbell* v. *State*, 300 Ark. 570, 781 S.W.2d 14 (1989), argues this court should not permit mootness to become determinant as to whether it rules on the merits of appellant's constitutional argument, since this case could serve to avert future litigation, and it also involves a question of great public interest. Although we adhere to the rule that this court ordinarily does not decide cases that are moot, *Logan* v. *State*, 299 Ark. 550, 776 S.W.2d 327 (1989), we believe the situation here is a matter of sufficient importance that warrants our decision on the merits.

In support of our decision to decide this case on its merits, we point out that the involuntary sterilization procedure under attack here could only be initiated by appellant's father, as her legal guardian. Appellant's father answered his daughter's complaint, denying he had ever sought her sterilization. Nonetheless, he later agreed to an order enjoining him from contacting his daughter for the purposes of initiating an involuntary sterilization. Of course, if that order was still in effect, one could argue the appellant is protected against her father's future contacts and suggestions of sterilization. However, while both the appellant

and the state in oral argument seem to surmise that the agreed restraining order signed by the trial court remains intact, we question the reliability of such a conclusion since the trial court later "dismissed this case" because of mootness. Of course, the significance of the trial court's dismissal of the case bears directly upon whether appellant remains at risk to future contact and litigation since her father no longer appears to be enjoined from contacting her or from initiating involuntary sterilization. Our decision to decide this case on its merits could well avert such future litigation.

■ In addition to the foregoing, we also find merit in appellant's argument that public interest requires this court to reach the constitutional question raised by appellant. The Supreme Court has said that the right to marriage and procreation are fundamental to the very existence and survival of the race, and the power to sterilize, if exercised, may have subtle, far-reaching and devastating effects. *Skinner* v. *Oklahoma*, 316 U.S. 535 (1942). When confronted with a serious constitutional question bearing on one of Arkansas's statutory schemes providing for involuntary sterilization, we are convinced that public interest dictates our consideration of that statutory law, especially when, by the Attorney General's own admission, a serious question exists concerning that law's constitutional validity. We recognize, too, that while appellant here obtained counsel who appropriately raised the constitutional question surrounding §§ 20-49-301 to -304, we can safely presume such an opportunity to test this constitutional issue is a rare one, since incompetents under those statutory provisions, are not given notice of their rights, afforded counsel, or offered an opportunity to be heard as to whether they should undergo sterilization.

In reaching appellant's constitutional argument, we first note that the right of a state to sterilize retarded or insane persons was first upheld by the United States Supreme Court in *Buck* v. *Bell*, 274 U.S. 200 (1927). There, in upholding a Virginia sterilization law, the Court held that the state may provide for the sterilization of a feebleminded inmate of a state institution where it is found that she is the probable potential parent of socially inadequate offspring, and that she may be sterilized without detriment to her general health, and that her welfare and that of society will be promoted by her sterilization.

■ Since *Buck*, many states, including Arkansas, have passed sterilization laws. *See In re Sterilization of Moore*, 289 N.C. 95, 221 S.E.2d 307 (1976); Annotation, *Validity of Statutes* Authorizing Asexualization or Sterilization of Criminals or *Mental Defectives*, 53 A.L.R.2d 960 (1973). Some of these statutes have been declared unconstitutional because they failed to provide for notice and a hearing. *Moore*, 289 N.C. at 98, 221 S.E.2d at 309. Professor Clark has said that the mentally incompetent's condition justifies a requirement of the utmost procedural protection for anyone subjected to involuntary sterilization. H. Clark, *The Law of Domestic Relations* § 5.2 (2nd ed. 1988). We certainly agree.

The statutory direct medical channels sterilization provisions questioned here, §§ 20-49-301 to -304, are first triggered by a mental incompetent's parent or legal guardian. That parent or guardian can obtain sterilization on his or her child or ward by filing with an approved hospital the certificates of three doctors or medicine, reflecting that those doctors have examined the incompetent and a sterilizing procedure is justified. The sterilization may be consummated after the hospital's sterilization committee reviews and approves the request. None of these statutory procedures mentions any notice to be provided an incompetent, any suggestion an incompetent is entitled to counsel, any opportunity for the incompetent to be heard as to the need for sterilization, or any right to cross-examine those seeking the incompetent's sterilization. In sum, this procedure falls far short of the minimum requirements of procedural due process. *See Matter of C.D.M.*, 627 P.2d 607 (Alaska 1981); *In re Penny N.*, 414 A.2d 541 (N.H. 1980); *see also* 44 C.J.S. *Insane Persons* § 71 (1945).

For the above reasons, we hold §§ 20-49-301 to -304 unconstitutional and remand this cause with directions to enter an order consistent with this court's opinion.