IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-204

No. COA20-864

Filed 5 April 2022

New Hanover County, No. 19CVS1562

SUSAN B. HALL, Plaintiff,

v.

WILMINGTON HEALTH, PLLC, Defendant.

Appeal by defendant from order entered 14 July 2020 by Judge J. Stanley
Carmical  in Superior Court, New Hanover County.  Heard in the Court of Appeals 7
September 2021.

*Reiss & Nutt, PLLC, by Kyle J. Nutt, for plaintiff-appellee.*

*Walker, Allen, Grice, Ammons, Foy & Klick, LLP, by Norman F. Klick, Jr. and
Jerry A. Allen, Jr., and Robinson, Bradshaw & Hinson, P.A., by Robert E.
Harrington, for defendant-appellant.*

STROUD, Chief Judge.

¶ 1        This case involves a discovery order intended to address concerns regarding
safety and travel during the COVID-19 pandemic.  The issue here arose at the very
start of the pandemic, and since then, judges and attorneys have learned a great deal
about COVID-19, proceedings by remote video-conference, and juggling the ever-
changing guidelines, emergency orders, and recommendations regarding COVID-19.
Hindsight is 20/20, and we recognize this Court has the benefit of hindsight but the

trial court did not. Instead, the trial court was dealing with a discovery dispute in the context of an unprecedented public health emergency. But the Courts "shall be open" and the Constitution is not suspended by any pandemic or emergency directives.

¶ 2 Defendant, Wilmington Health, appeals from the trial court's order requiring all depositions to be taken by "remote videoconferencing in separate locations from the witness" and that "no counsel shall be physically present with the witness at any deposition." Under the Rules of Civil Procedure, the trial court generally has broad discretion in resolving discovery disputes and entering orders limiting or setting guidelines for discovery, but here, the trial court's order went beyond the relief requested by Plaintiff, Susan Hall, and imposed a limitation upon depositions of all witnesses which would also prevent Defendant's counsel from being present in person at depositions of Defendant's own witnesses and employees.

¶ 3 This wholesale ban on personal attendance of Defendant's counsel at depositions of its own employees and witnesses presented the constitutional issue Defendant asserts in this appeal and was not supported by existing law, emergency orders, or evidence. The trial court's order violated Defendant's constitutional right by prohibiting counsel from being physically present at depositions of its own employees and witnesses. We reverse and remand for further proceedings.

## I. Background

¶ 4     This appeal arises from a discovery dispute in a medical malpractice action. On 29 April 2019, Plaintiff filed a complaint against Defendant alleging medical malpractice as defined by North Carolina General Statute § 90-21.11(2) (2017), asserting claims of negligence, gross negligence, and punitive damages, arising from Defendant's alleged failure to timely diagnose skin cancer. Plaintiff alleged the delay in diagnosis and treatment of her cancer reduced her life expectancy. The issue presented here arises from the procedural history of the case and specifically from limitations placed upon depositions in the case, so we focus on that procedural history.

¶ 5     The trial court held a hearing regarding the discovery schedule in October 2019 and rendered its ruling regarding the deadlines for the Discovery Scheduling Order ("DSO") at the same time, but the DSO was not entered until 17 January 2020. Despite the delay in the issuance of the written order, the parties began complying with the schedule as set forth by the trial court in October 2019 prior to formal entry of the order. For example, the DSO required Plaintiff to designate her expert witnesses on or before 4 January 2020, and Plaintiff designated them on 3 January 2020. Under the DSO, the deadline for depositions of Plaintiff's expert witnesses was 4 March 2020. Due initially to scheduling conflicts for Defendant's counsel, the depositions of Plaintiff's designated experts did not take place by the 4 March 2020 deadline with Plaintiff instead offering the expert's availability on 27 May 2020.

By early March, 2020, the COVID-19 pandemic reached our shores, abruptly changing daily life and even the legal system's processes. On 10 March 2020, Governor Roy Cooper entered Executive Order No. 116, the first of many emergency orders entered in response to the COVID-19 pandemic.[1] This order declared a state of emergency under North Carolina General Statute § 166A-19.3(6) and (19) based on "the public health emergency posed by COVID-19," and also pertinently: (1) created the "Governor's Novel Coronavirus Task Force on COVID-19"; (2) authorized state agencies to "cancel, restrict or postpone travel of state employees as needed to protect the wellbeing of others"; (3) ordered state and local health authorities to "implement public health surveillance and control measures" for people who "have been diagnosed with or are at risk of contracting COVID-19 in order to control or mitigate spread of the disease"; and (4) took a variety of other measures to secure and allocate resources to combat the spread of COVID-19 in the state. E.O. 116, Cooper, 2020, § 1 (state of emergency), § 10 (taskforce), § 11(b) (travel restrictions), § 12 (public health measures), §§ 5–9, 11(a), 13–22 (other measures). On 14 March 2020, Governor Cooper entered Executive Order No. 117, which, pursuant to his powers under North Carolina General Statute § 166A-19.30, prohibited "mass gatherings" of more than 100 people in certain locations, closed schools, and encouraged social distancing, hand

---

[1] With the consent of the parties as noted during oral argument, we take judicial notice of the Executive Orders entered by Governor Roy Cooper.

washing and sanitizing, and the practice of "proper respiratory etiquette" in line with guidance from the Centers for Disease Control and Prevention (CDC). E.O. 117, Cooper, 2020, §§ 1–3.

¶ 7 On 1 June 2020, Plaintiff filed a motion to require depositions to be taken by telephonic or virtual means under North Carolina Rules of Civil Procedure 30(b)(7) and 26(c). Plaintiff based her motion upon the COVID-19 pandemic, specifically safety concerns regarding being in a room with several people for in-person depositions and the travel required to attend depositions. Plaintiff alleged depositions were set for 21 July 2020 of Dr. Steven Feldman in Wake Forest, North Carolina, and for 30 July 2020 of Dr. Jeffery Wayne, in Chicago, Illinois. Plaintiff further alleged in-person depositions would require air travel, putting people in close proximity in rooms for extended periods of time, and that masks may impair questioning and transcription of testimony. Plaintiff also noted Chief Justice Cheri Beasley had encouraged virtual depositions.[2] On 12 June 2020, Defendant moved to

---

[2] We have reviewed all the emergency directives issued by Chief Justice Beasley in effect on the 1 June 2020 filing date of Plaintiff's motion (Emergency Directives 1 to 19), and we did not find any instance in which she encouraged virtual depositions. Order of the Chief Justice Extending and Modifying Emergency Directives 2 to 8 (30 May 2020); Order of the Chief Justice Emergency Directives 9 to 16 (21 May 2020); Order of the Chief Justice Emergency Directives 17 to 19 for Staying all Pending Evictions and Establishing New Mediation Program (30 May 2020); *see also* Order of the Chief Justice Extending Emergency Directives 1 to 8 until May 30 (1 May 2020) (indicating Emergency Directive 1 would expire May 30 but the terms of the directive required rescheduling most court proceedings until no sooner than 1 June 2020 or conducting them remotely). Rather, the emergency directives focused on

amend the Discovery Scheduling Order due to COVID-19 and responded to Plaintiff's motion for virtual depositions. Defendant specifically noted the parties had already agreed the deadline for Defendant to identify its expert witnesses would be extended from 15 June 2020 to 15 August 2020.

¶ 8 On 9 July 2020, Defendant filed a response to Plaintiff's motion for virtual depositions. Defendant noted it had requested amendment of the Discovery Scheduling Order and alleged there would be sufficient time to do in-person depositions when pandemic restrictions were lifted. Defendant also highlighted that Rule 30 provides that attendance at a deposition may be compelled and a deponent may be required to attend a deposition only in the county of residence. In addition, Defendant contended none of the Chief Justice's Emergency Directives prohibited standard in-person depositions. Defendant further noted civil jury trials were not being held and it was unknown when jury trials would resume, so the trial would not be able to proceed as scheduled on 8 February 2021.

¶ 9 By a remote videoconference hearing via WebEx, the trial court heard the Plaintiff's motion for virtual depositions on 9 July 2020. At the hearing, Plaintiff's

---

remote court proceedings (Emergency Directives 1, 9), which are different because courthouses would bring more people together typically than a deposition. Order of the Chief Justice Extending Emergency Directives 1 to 8 until May 30 (1 May 2020); Order of the Chief Justice Emergency Directives 9 to 16 (21 May 2020). If Plaintiff was referring to encouragement by Chief Justice Beasley outside of the emergency directives, she did not include citation to such in her motion.

counsel noted his concerns regarding his personal health and potential exposure to COVID-19 as well as restrictions on travel. He also discussed the various technologies available for remote videoconferencing. As to the deposition scheduled in Chicago, he noted that restrictions on travel had recently been imposed, requiring travelers entering Chicago to quarantine for a period of 14 days.[3] Plaintiff's counsel also emphasized the need to proceed expeditiously with the case due to his contention Plaintiff's life expectancy may be limited due to her skin cancer.

¶ 10    Defendant responded by noting Plaintiff's medical records did not indicate she was unlikely to survive until the trial date and her recent evaluations were favorable, according to Defendant's experts. He also noted depositions by videoconference in this case would be difficult due to the length of the depositions and need to refer to many exhibits. Defendant's counsel then discussed the difficulty the parties had in scheduling Plaintiff's deposition, which was delayed from April 2020 to July 2020

---

[3] We take judicial notice of Public Health Order No. 2020-10, Quarantine Restrictions on Persons Entering Chicago from High Case-Rate States, issued on 2 July 2020. As Plaintiff explained at the hearing, Public Health Order No. 2020-10 required anyone coming to Chicago from a "High Incidence State"—defined as "a COVID-19 new case rate greater than 15 COVID-19 cases per 100,000 resident population per day, over a 7- day rolling average"—quarantine for 14 days or the duration of their time in Chicago, whichever was shorter. Public Health Order No. 2020-10, Quarantine Restrictions on Persons Entering Chicago from High Case Rate States, § 1. As of the 9 July 2020 hearing date, Plaintiff argued North Carolina counted as a High Incidence State, so any travelers to Chicago from North Carolina would be subject to the mandatory 14-day quarantine including the attorneys in this case if they traveled for an in-person deposition of Dr. Wayne. Our record does not include the North Carolina case rate statistics from July 2020, but Defendant does not dispute this characterization of the travel limitations at the time and we will assume it is correct.

because she was not feeling well in April. He indicated the case is factually complex, and considering the progression of the pandemic and cancellation of jury trials across the state, the case would not be able to be heard in February 2021 as scheduled. Defendant argued that in-person depositions have inherent benefits lacking in the videoconference setting: "There is definitely an advantage to evaluating someone by meeting them in person. I think that's just common sense. If we all met our wives over a videoconference, things may have gone differently, and look what happened."

¶ 11 After the hearing, the trial court rendered a ruling on both Plaintiff's motion to hold depositions virtually and Defendant's motion to amend the Discovery Scheduling Order. The trial court noted there were:

> two separate issues: One is defendant's motion to be able
> to take the deposition telephonically or by virtual means --
> the plaintiff's motion, rather -- and then the defendant not
> only responds that I should not allow that, but also that we
> revisit the scheduling order.

The trial court further explained:

> I think the chief justice's concern is that the Courts try to
> accomplish more, and it seems to me, if nothing else,
> there's no reason for the depositions to be on hold. They can
> be conducted remotely, safely, and, it seems to me, an
> additional benefit is saving great expense for a number of
> folks that would have to travel, be housed somewhere.
> Even apart from the pandemic, though. If the witness came
> from Chicago, that's some expense. If the lawyers go there
> or retain counsel in Illinois to depose the witness, that's
> going to involve expense.

The trial court then allowed Plaintiff's motion for virtual depositions and ordered depositions by both parties would be taken by videoconference. It also denied, without prejudice, Defendant's motion to amend the Discovery Scheduling Order explaining, "I can't predict what the pandemic is going to look like" so the court would consider revising the schedule based upon future developments.

¶ 12 Following its rulings at the hearing, the trial court issued its written order on the motions for remote depositions and to amend the DSO on 14 July 2020. The written order addressed a subject not raised before in the parties' filings or at the hearing: whether deponents could have counsel present in-person with them. None of the previous filings and proceedings had mentioned any particular restrictions upon the deponent or limitation on the ability of a deponent to have counsel present at a deposition in person. Plaintiff's motion did not request such a restriction. At the hearing, neither party addressed any limitations on counsel's presence with a witness being deposed,[4] and the trial court did not issue any ruling on this issue. Despite

---

[4] While Plaintiff's counsel noted that in his experience the technology used for remote depositions has been "designed for one person to attend from a closed office, from their screen with a mike [sic] and a camera" as part of an argument about "technology logistical issues" if only he was remote but a witness and Defendant's counsel were in the same room, Plaintiff ultimately concluded "[w]e've got to get the technology coordinated" where he could see Defendant's counsel "and not to have that technology conflicting with each other." Thus, Plaintiff's counsel merely noted it may be technologically more difficult to have him as the only person remote rather than arguing for an order that everyone had to be separate.

that lack of prior mention of the subject, the trial court's order barred physical presence of counsel with any witness as follows:

> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion to Require Depositions be Taken by Telephonic or Virtual Means is GRANTED, and all counsel shall appear at any and all depositions solely by remote videoconferencing and *counsel shall not physically appear in the presence of the witness*. The witness shall also appear by remote videoconferencing *outside the physical presence of any counsel for any party*. This Order shall apply equally to all parties and their counsel. Furthermore, all depositions by remote videoconferencing methods shall afford audio and visual interaction, with information to access and participate provided in the Notice of Deposition.

(Emphasis added.) The same order also denied, without prejudice, Defendant's motion to amend the DSO. Defendant filed notice of appeal on 10 August 2020.

## II.   Jurisdiction

Before reaching the merits of this case, we must address whether this court has jurisdiction to hear the appeal. *See, e.g., Dogwood Development and Management Co., LLC v. White Oak Transport Co., Inc.*, 362 N.C. 191, 197, 657 S.E.2d 361, 364–65 (2008) (explaining an appellate court must have jurisdiction to hear an appeal). Because the order from which Defendant appeals is not a final order resolving all claims, it is interlocutory. *See Veazey v. City of Durham*, 231 N.C. 357, 361–62, 57 S.E.2d 377, 381–82 (1950) (laying out the distinction between final judgments and interlocutory orders).

¶ 14        While in general parties may not seek immediate appeal of an interlocutory order, they can appeal when the interlocutory order "affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment." *Department of Transp. v. Rowe*, 351 N.C. 172, 174–75, 521 S.E.2d 707, 709 (1999) (quoting *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381); *see also* N.C. Gen. Stat. § 1-277(a) (2019) (allowing appeal from every judicial order in district or superior court "which  affects a substantial right claimed in any action or proceeding"); N.C. Gen. Stat. § 7A-27(b)(3)(a) (2019) (allowing appeal from any interlocutory order of a superior or district court in a civil proceeding that "[a]ffects a substantial right").

¶ 15        Here, in its Rule of Appellate Procedure 28(b)(4) "Statement of Grounds for Appellate Review," Defendant argues the order on appeal affects a substantial right and is therefore immediately appealable under North Carolina General Statutes §§ 1-277 and 7A-27(b)(3)(a) because the order deprives Defendant of its constitutional rights to due process and counsel and these rights will "be lost forever if uncorrected before appeal from final Judgment."

¶ 16        Plaintiff filed a motion to dismiss the appeal on the grounds the order on appeal "is interlocutory, does not affect a substantial right, and is not immediately appealable."  In response to Plaintiff's motion to dismiss and in the alternative to finding the order on appeal affects a substantial right, Defendant filed a petition for

writ of certiorari ("PWC") under Rule of Appellate Procedure 21 to permit review. Defendant argues issuing the writ "will avoid undue delay, [and] promote judicial economy and the administration of justice . . . while preventing manifest injustice, avoiding unnecessary delays[,] and saving judicial resources." Defendant later moved to amend the PWC to add two additional paragraphs emphasizing the novel nature of the order's ban on all physical presence at depositions and addressing a preservation issue first raised in Plaintiff's response brief. Plaintiff's motion to dismiss and Defendant's PWC and motion to amend the PWC all turn on our decision as to jurisdiction, so we turn to that issue now.

¶ 17       The first issue affecting our jurisdiction is whether the order on appeal affects a substantial right; if it does, we have jurisdiction and need not reach Defendant's PWC. A substantial right is "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a man is entitled to have preserved and protected by law: a material right." *Oestreicher v. American Nat. Stores, Inc.*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976) (quotations and citation omitted). To help apply that definition, "a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury to plaintiff if not corrected before appeal from final judgment." *Goldston v. American Motors Corp.*, 326 N.C. 723, 726,

392 S.E.2d 735, 736 (1990) (citing *Wachovia Realty Investments v. Housing, Inc.*, 292 N.C. 93, 232 S.E.2d 667 (1977)).

¶ 18     "Admittedly the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied.  It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered."  *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).  Still, we do not need to decide whether the party claiming a substantial right would win on the merits; it is enough that a substantial right would be impacted if the party had to suffer the alleged harm.  *See Sharpe v. Worland*, 351 N.C. 159, 164–65, 522 S.E.2d 577, 580–81 (1999) (in a case where a party claimed statutory privilege as to certain documents, explaining the court, at the jurisdictional stage, did not need to determine whether the statutory privilege applied only whether it could apply).

¶ 19     Here, Defendant argues the trial court's order impairs its due process right by preventing its attorney from being physically present at depositions of its own representative witnesses and experts.  This Court has recognized "that civil litigants have a due process right to be heard th[r]ough counsel that they themselves provide." *Tropic Leisure Corp. v. Hailey*, 251 N.C. App. 915, 920, 923–24, 796 S.E.2d 129, 133, 135 (2017) (explaining the due process right has been widely recognized and then finding a due process violation when a litigant had no opportunity to be represented

by counsel in small claims court in a foreign jurisdiction).  Since counsel at depositions represent clients by objecting to improper questions and protecting privileges, among other things, that due process right could apply here.  Especially in the realm of privileges, which protect the other side from ever knowing the privileged information, *see* N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (stating privileged material is not even discoverable), Defendant could suffer harm—namely the inability to assert privilege and subsequent revelation of privileged information—if this order is not addressed before final judgment.

¶ 20      We have also previously recognized the "constitutional right to due process is a substantial right." *Savage Towing Inc. v. Town of Cary*, 259 N.C. App. 94, 99, 814 S.E.2d 869, 873 (2018).  As a result, we find the order on appeal affects a substantial right in that it threatens Defendant's constitutional due process rights.  Therefore, we have appellate jurisdiction pursuant to North Carolina General Statutes §§ 1-277(a) and 7A-27(b)(3)(a).

¶ 21      Given the order on appeal affects a substantial right thereby granting appellate jurisdiction, we deny Plaintiff's motion to dismiss the appeal.  Because we have found Defendant has a right to appeal, we deny his PWC.  We cannot grant a PWC based on Rule of Appellate Procedure 21 once we have found a right of appeal from an interlocutory order because the two are mutually exclusive.  *See* Rule of Appellate Procedure 21(a)(1) (only allowing a writ of certiorari when, *inter alia*, "no

right of appeal from an interlocutory order exists"). Because we deny Defendant's PWC, we also deny as moot his motion to amend the PWC. Having clarified the grounds for our jurisdiction and addressed the outstanding motions and petition, we turn to the merits of the case.

### III. Deprivation of Due Process and Right to Presence of Counsel

Defendant first contends the trial court erred "in entering an order that patently violates [Defendant]'s constitutional rights by, among other things, prohibiting counsel from being physically present at depositions of their clients, witnesses they represent[,] and witnesses they designate as expert witnesses." Specifically, Defendant argues the order infringed on its due process right to "retained counsel being present at critical stages of litigation" without substantial justification. (Capitalization altered.) Defendant further asserts prejudice from this error is presumed.

### A. Preservation

Before reaching Defendant's substantive arguments, we address whether the issue was preserved. Plaintiff contends Defendant waived its right to raise a constitutional argument on appeal by its failure to make this argument to the trial court. But Defendant responds it never had a chance to raise an objection or a constitutional argument regarding the trial court's order that counsel not be allowed to be present with a witness or client during a deposition, as Plaintiff's motion did

not request such a restriction and the trial court did not mention this restriction when rendering the ruling at the hearing on the motion. Defendant is correct, as the trial court's order goes beyond the relief requested by Plaintiff by ordering restrictions on attendance at depositions and requiring that no attorney be present in the same room as a witness during a deposition. Plaintiff requested only that depositions be held by remote videoconference based upon Plaintiff's counsel's concerns regarding his own health and potential exposure to COVID-19 as well as restrictions on travel applicable to the deposition scheduled to be held in Chicago, Illinois. As a result, Defendant had no notice or opportunity to raise the issue of restrictions on its own counsel's attendance. Until the trial court issued the order, Defendant had no reason to think such restrictions were forthcoming and would need to be the subject of an objection.

¶ 24        We also reject Plaintiff's argument Defendant invited the error in this case. Plaintiff points to Defendant's acceptance of the trial court's discretion in the matter as invited error. Plaintiff isolates a single phrase, but looking at the whole paragraph, it is clear Defendant acknowledged the court's discretion in the context of arguing it should exercise that discretion to deny Plaintiff's motion and allow in person depositions to move forward:

> It's just not fair for him to be able to say yeah, those four months of COVID, I want to dictate that you have to do everything by videoconference, and you're not going to be

> able to move the trial. It's just patently unfair, Your Honor, and we do agree -- the Court obviously has discretion, but we would submit that that rule, if you look at how it's applied, has never been applied in this fashion, where Rule 30 was used to prevent -- at least as far as I'm aware of any appellate case, to prevent in-person depositions.

On top of this, the full quote above does not mention any restrictions on deposition attendance that Defendant allegedly invited, which it could not have done since those never came up at the hearing or at any time before the issuance of the written order on appeal. Thus, we reject both of Plaintiff's arguments that Defendant failed to preserve the issue before us.

**B. Standard of Review**

"As a general rule, we review the trial court's rulings regarding discovery for abuse of discretion." *Myers v. Myers*, 269 N.C. App. 237, 240, 837 S.E.2d 443, 447 (2020); *see also Hartman v. Hartman*, 82 N.C. App. 167, 180, 346 S.E.2d 196, 203 (1986) (indicating protective orders under Rule 26(c), the basis for Plaintiff's motion, are subject to review for abuse of discretion). However, the restrictions imposed by the trial court in this case go beyond the typical discretionary matters involved with discovery orders.

For example, Rule of Civil Procedure 30(b)(7), upon which Plaintiff relied in arguing for remote depositions, allows a trial court upon a motion to order a deposition be taken by telephone. N.C. Gen. Stat. § 1A-1, Rule 30(b)(7) (2019). It

does not provide any guidance on whether a trial court could also bar a deposed party's attorneys from being physically present with their own client during the call, which is the appropriate analogy to the court's order here.

¶ 27    The general rule that *de novo* review is appropriate "in cases where constitutional rights are implicated," as they are here, reinforces our determination that the de novo standard of review applies here. *See Piedmont Triad Regional Water Authority v. Sumner Hills Inc.,* 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) ("It is well settled that de novo review is ordinarily appropriate in cases where constitutional rights are implicated."). Under the *de novo* standard of review, "the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Cooper v. Berger*, 256 N.C. App. 190, 193, 807 S.E.2d 176, 178 (2017) (quoting *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009)); *see also Parker v. Glosson*, 182 N.C. App. 229, 231, 641 S.E.2d 735, 737 (2007) (explaining *de novo* appeals involve the appellate court using the trial court's record but reviewing the evidence and law "without deference to the trial court's rulings" (quotations and citation omitted)).

**C. Analysis**

¶ 28    Before analyzing the trial court's order, we note it has three relevant elements. First, the trial court ordered that all depositions had to be held by remote videoconference. Second, the trial court ordered that no attorney and witness could

be present in the same room during a deposition. Third, the trial court imposed the same restrictions on all depositions without regard to where the deposition would be held or the particular circumstances of the deponent and counsel involved in a particular deposition.

¶ 29        The first of the two depositions in question in Plaintiff's motion involved a doctor in Wake Forest, North Carolina, which would not involve substantial travel for counsel for either party. The other deposition was scheduled to be held in Chicago, and at the time, travel restrictions imposed by Chicago would have effectively prevented counsel from going to Chicago for the deposition, since anyone who travelled to the city would be required to quarantine for 14 days before being allowed to take the deposition in person. *See* Footnote 3, *supra* (explaining the relevant Chicago quarantine rules). And Defendant does not contend the trial court abused its discretion or violated any constitutional right by requiring the deposition of the expert witness in Chicago to be done by remote videoconference. That out-of-state deposition clearly presented different challenges than a deposition of a witness in North Carolina.

¶ 30        Despite only those two depositions being scheduled, our analysis includes potential depositions of Defendant's employees and expert witnesses because the third part of the trial court's order applied it to *all* depositions in the case. Plaintiff disputes this characterization, arguing "[t]he issue before the Court . . . only concerns

the taking of expert and non-Defendant witness depositions." To support that argument, Plaintiff contends she had already taken depositions "of the only two employees of Defendant who had any involvement in the Plaintiff's care" and nothing in the record "disclosed that Plaintiff has expressed any intention to seek depositions of the corporate Defendant or other employees not involved in Plaintiff's care." Plaintiff's argument amounts to a claim that the right to counsel's presence issue is moot. *See Lange v. Lange*, 357 N.C. 645, 647, 588 S.E.2d 877, 879 (2003) (defining moot as when "a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy" (quoting *Roberts v. Madison County Realtors Assn.*, 344 N.C. 394, 398–99, 474 S.E.2d 783, 787 (1996))).

¶ 31        Presuming *arguendo* a mootness concern, mootness doctrine has a number of exceptions including, *inter alia*, a party's voluntary cessation of the challenged conduct and questions of public interest. *Thomas v. North Carolina Dept. of Human Resources*, 124 N.C. App. 698, 705, 478 S.E.2d 816, 820–21 (1996). Voluntary cessation is an exception to mootness because of the risk the party could restart their offending practice once an appeal were dismissed. *Id.*, 124 N.C. App. at 706, 478 S.E.2d at 821. Here, while Plaintiff says she would not have further deposed Defendant's employees, circumstances can change and she could change her mind if this appeal were dismissed. And Plaintiff still had not taken depositions of Defendant's expert witnesses, who have not yet been designated.

¶ 32    Alternately, "even if an appeal is moot, we have a duty to 'consider a question that involves a matter of public interest, is of general importance, and deserves prompt resolution.'" *In re Brooks*, 143 N.C. App. 601, 605, 548 S.E.2d 748, 751 (2001) (quoting *N.C. State Bar*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989)).  In the past, this Court and our Supreme Court have ruled the public interest exception applies based on the case involving issues of first impression, the gravity and "far reaching" nature of the issue, and significant public debate on the issue.  *Id.*, 143 N.C. App. at 606, 548 S.E.2d at 752 (first impression, gravity); *Chavez v. McFadden*, 374 N.C. 458, 468, 843 S.E.2d 139, 147 (2020) (public debate).

¶ 33    Here, the public interest exception applies because the issue of banning counsel from being present in-person with their clients during depositions is a matter of first impression with a potentially far-reaching effect.  The impact of COVID-19 and myriad restrictions imposed by various jurisdictions and entities is a still subject of significant public interest as demonstrated by a recent Proclamation from our Chief Justice on the subject.  *E.g.* Proclamation, Supreme Court of North Carolina Chief Justice Paul Martin Newby, Restoration of Full Court Operations (Feb. 24, 2022) (recent proclamation advising judicial officials "to resume immediately full

courthouse operations").[5]  As a result of these exceptions to mootness doctrine, the

issue of attorney presence with Defendant's representatives or witnesses during their

depositions is properly before us.

¶ 34          In a similar vein to the mootness argument, Plaintiff contends the order on

---

[5] The Chief Justice's Proclamation was distributed to the entire State judicial branch, but it is not formally published.  Despite the lack of publication, courts are intended to use and rely on the proclamation in restoring full court operations.  In recognition that the proclamation was not published, we reproduce its text in full here:
"WHEREAS, Article I, Section 18 of the North Carolina Constitution provides that '[a]ll courts shall be open' and that 'justice shall be administered without favor, denial, or delay[;]'
WHEREAS, the emerging COVID-19 pandemic necessitated the temporary suspension of some court operations in early 2020;
WHEREAS, these limitations of court operations were extended multiple times throughout 2020 by administrative orders;
WHEREAS, I entered an order on 14 January 2021 allowing local court officials to resume in-person proceedings;
WHEREAS, the Governor lifted all mass gathering limits on 14 May 2021 and announced that masking and social distancing requirements would no longer be needed in most places; and
WHEREAS, I terminated all remaining emergency directives by an administrative order dated 7 June 2021;
WHEREAS, federal and state officials have stated that COVID-19 will not be eliminated and that communities should return to their normal activities;
WHEREAS, North Carolina is experiencing a significant decline in COVID-19 cases, vaccines remain readily available, and people are returning to normal daily life in other areas of society;
WHEREAS, the Governor and state health officials have recently encouraged schools and local governments to end mask mandates and most municipalities and school boards have ended mask mandates;
WHEREAS, some judicial districts are still limiting their court operations which impairs their ability to administer timely and impartial justice.
NOW, THEREFORE, I advise all judicial officials to resume immediately full courthouse operations and administer justice without further delay as mandated by the North Carolina Constitution."
(Alterations in original.)

appeal "provided Defendant a mechanism to request a modification in the event Plaintiff's counsel did seek additional depositions of Defendant or its employees." (Italics removed.) Plaintiff's argument rehashes the issue of whether the order on appeal is a final judgment or whether it is something less than final. We reject this argument because we have already ruled Defendant is entitled to an interlocutory appeal since the order on appeal affects a substantial right.

¶ 35        Turning to the primary issue, Defendant argues the trial court erred "by, among other things, prohibiting counsel from being physically present at dispositions of their clients, witnesses they represent and witnesses they designate as expert witnesses" because that infringes on Defendant's due process right to "retained counsel being present at critical stages of litigation" without substantial justification. (Capitalization altered.) Defendant then argues prejudice from this error is presumed. We agree with Defendant that the trial court's order violated its rights under the Constitution of the United States' Fourteenth Amendment's Due Process Clause.[6]

---

[6] Defendant also argues the order violates its rights under the North Carolina Constitution. Defendant argues the order violates both Article I, Section 25's right of jury trial in civil cases and Article I, Section 19's "law of the land" clause. The "law of the land" clause "is synonymous with 'due process of law' as used in the Fourteenth Amendment," *In re Moore's Sterilization*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976), so we find a violation of Defendant's rights under the North Carolina Constitution on the same grounds as the Fourteenth Amendment Due Process Clause violation. As a result of finding that violation, we do not reach Defendant's argument the order violates his right to trial by jury under Article I, Section 25.

¶ 36          We first note the relevant provisions of the Rules of Civil Procedure.  Plaintiff's

motion was based upon Rules 26(c) and 30 of the North Carolina Rules of Civil

Procedure.  Under Rule 30(b)(7):

> The parties may stipulate in writing or the court may upon
> motion order that a deposition be taken by telephone. For
> the purposes of this rule and Rules 28(a), 37(a)(1) and
> 45(d), a deposition taken by telephone is taken in the
> district and the place where the deponent is to answer
> questions propounded to him.

N.C. Gen. Stat. § 1A-1, Rule 30(b)(7).  Under Rule 26(c), a trial court has discretion,

upon good cause shown, to enter orders to protect a party or person from

"unreasonable annoyance, embarrassment, oppression, or undue burden or expense"

including an order "(v) that discovery be conducted with no one present except

persons designated by the court."  N.C. Gen. Stat. § 1A-1, Rule 26(c).  This Court has

noted:

> In order to determine whether a party or deponent has
> shown "good cause" for an order protecting him "from
> unreasonable annoyance, embarrassment, oppression, or
> undue burden or expense," the trial court must consider the
> specific discovery sought and the factual circumstances of
> the party from whom discovery is sought.  *See, e.g.,*
> *Guessford v. Pa. Nat'l Mut. Cas. Ins. Co.*, 2013 WL
> 2242988, *3, 2013 U.S. Dist. LEXIS 71636, *9–10
> (M.D.N.C., May 21, 2013) ("Rule 26(c)'s requirement of a
> showing of 'good cause' to support the issuance of a
> protective order . . . contemplates a particular and specific
> demonstration of fact[.]") (quoting *Jones v. Circle K Stores*,
> 185 F.R.D. 223, 224 (M.D.N.C.1999) (internal quotation
> omitted)), *partial summary judgment granted in part and*

*denied in part on other grounds*, 963 F.Supp.2d 652, 2013
WL 5708053 (M.D.N.C. Oct. 18, 2013).

*In re Accutane Litigation*, 233 N.C. App. 319, 323, 758 S.E.2d 13, 17 (2014).

¶ 37        The limitation on personal attendance of a deposition by counsel is unusual; no North Carolina case has previously addressed this type of limitation. Under Rule 26, this type of limitation is normally intended to "protect the deponent from embarrassment or ridicule intended by the calling party." *Galella v. Onassis*, 487 F.2d 986, 997, n.17 (2d Cir. 1973). Very few federal cases address this type of limitation, but when imposed, the rationale normally has been the protection of the deponent from some sort of personal harassment or threat.

¶ 38        For example, in *Gallela v. Onassis*, under Rule 26(c) of Federal Rules of Civil Procedure, the trial court ordered that the plaintiff Mr. Gallela could not personally attend the deposition of defendant, Jacqueline Onassis, the widow of President John F. Kennedy, due to his long history of harassment of Ms. Onassis and the Kennedy family as a paparazzo and his violation of prior court orders.[7] *Id.* at 991, 996–97. The United States Court of Appeals, Second Circuit, held the trial court acted within its discretion in excluding the plaintiff from Ms. Onassis's deposition, noting:

---

[7] As the Court of Appeals noted, "Galella fancies himself as a 'paparazzo' (literally a kind of annoying insect, perhaps roughly equivalent to the English 'gadfly.') Paparazzi make themselves as visible to the public and obnoxious to their photographic subjects as possible to aid in the advertisement and wide sale of their works." *Galella*, 487 F.2d at 991–92 (footnote omitted).

> At the time the order was issued, Galella had already been charged with violation of the court's temporary restraining order which was entered to protect the defendant from further harassment. Such conduct could be deemed to reflect both an irrepressible intent to continue plaintiff's harassment of defendant and his complete disregard for judicial process. Anticipation of misconduct during the examination could reasonably have been founded on either.

*Id.* at 997. Certainly, this case presents a very different situation, but the trial court had discretion to address the circumstances of the depositions under Rule 26(c). Plaintiff did not claim to need protection from "unreasonable annoyance, embarrassment, oppression." N.C. Gen. Stat. § 1A-1, Rule 26(c). Plaintiff's concerns arose from "undue burden or expense" caused by health risks posed by COVID-19 and limitations on travel created by COVID-19 emergency orders. Thus, the trial court had discretion to enter an order limiting discovery under Rules 26 and 30, for good cause shown, but the question presented here is whether those limitations went so far as to infringe upon Defendant's due process rights to representation by counsel in the depositions of its own employees and expert witnesses.

¶ 39        In pertinent part, the Fourteenth Amendment provides no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This Court has previously recognized "that civil litigants have a due process right to be heard th[r]ough counsel that they themselves provide." *Tropic Leisure*, 251 N.C. App. at 920, 923–24, 796 S.E.2d at 133, 135 (explaining the due

process right has been widely recognized and then finding a due process violation when a litigant had no opportunity to be represented by counsel in small claims court in a foreign jurisdiction). *Tropic Leisure* also provides guidance for future explanations of the contours of the right. First, the *Tropic Leisure* Court lists "[a] number of state and federal courts" that "have expressly recognized this principle over the past few decades." *Id.*, 251 N.C. App. at 921, 796 S.E.2d at 133–34. Second, as pertinent here, the court explained the due process right to be heard through retained counsel includes assistance at "the critical fact-finding phase of the litigation." *Id.*, 251 N.C. App. at 923, 796 S.E.2d at 135. There "is simply no substitute for the opportunity to have his chosen counsel develop a factual record at trial." *Id.* While *Tropic Leisure* focused on the trial context at issue in that case, its emphasis on the importance of access to the legal assistance of retained counsel in developing a factual record extends to the discovery context at issue here.

¶ 40        Our extension of the right to retained counsel in civil cases to the discovery context finds additional support in the federal cases to which *Tropic Leisure* cites. 251 N.C. App. at 921, 796 S.E.2d at 133–34. In *Danny B. ex rel. Elliott v. Raimondo*, the First Circuit explained the "fundamental principle" that "[c]ivil litigants have a constitutional right, rooted in the Due Process Clause, to retain the services of counsel" and how that right "safeguards a litigant's interest in communicating freely with counsel *both in preparation for* and during trial." 784 F.3d 825, 831 (1st Cir.

2015); *see also Tropic Leisure*, 251 N.C. App. at 921, 796 S.E.2d at 133 (citing *Danny B.*). "After all, the right to retain counsel would be drained of meaning if a litigant could not speak openly with her lawyer about her case and how best to prosecute it." *Danny B.*, 784 F.3d at 831. Given *Danny B.*'s emphasis on safeguarding a litigant's interest in communicating freely in preparation for trial, it further supports extending the due process right to retain counsel to the discovery context.

¶ 41 Another case cited by *Tropic Leisure*, *Potashnick v. Port City Const. Co.*, 609 F.2d 1101 (5th Cir. 1980), also supports Defendant's position. *See Tropic Leisure*, 251 N.C. App. at 921, 796 S.E.2d at 133–34 (citing *Potashnick*). In that case, the Fifth Circuit first provided a historical overview of how the right to retain counsel in civil litigation is implicit in the concept of due process.[8] *Potashnick*, 609 F.2d at 1117 (citing *Powell v. Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55 (1932)).[9] The *Potashnick* Court further explained the Due Process Clause's right to retain civil counsel reflects

---

[8] The *Potashnick* court relied on the Fifth Amendment Due Process Clause, but the promise of due process in that clause is the same as in the Fourteenth Amendment's Due Process Clause. *E.g. Malinski v. New York*, 324 U.S. 401, 415, 65 S. Ct. 781, 788 (1945) ("To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection.").

[9] While *Powell* was a criminal case, its decision "was based on the due process clause rather than the Sixth Amendment (which had not yet been held applicable to the states), and its logic embraces civil litigation." *Guajardo-Palma v. Martinson*, 622 F.3d 801, 803 (7th Cir. 2010). This distinction between the Due Process Clause's right to civil counsel and the Sixth Amendment's right to criminal counsel also leads us to reject Defendant's argument that "the well recognized constitutional right to have counsel physically present in criminal cases applies to this case." (Capitalization altered.)

that "the litigant usually lacks the skill and knowledge to adequately prepare his case, and he *requires the guiding hand of counsel at every step in the proceedings against him.*" *Id.* at 1118 (emphasis added). Thus, *Potashnick* also supports extending the right to discovery proceedings.

¶ 42 Based on *Tropic Leisure* and the cases upon which it relied, we hold the due process right to retain and have counsel heard in civil cases extends to having the assistance of retained counsel at depositions. *Tropic Leisure* and the federal cases it relied upon emphasize the importance of having retained counsel's assistance throughout the legal process including fact-finding phases such as discovery. *See Tropic Leisure*, 251 N.C. App. at 923, 796 S.E.2d at 135 (emphasizing the importance of retained counsel's assistance with fact-finding phase of litigation); *Danny B.*, 784 F.3d at 831 (highlighting the need to freely communicate with counsel in preparation for trial); *Potashnick*, 609 F.2d at 1118 (explaining a litigant "requires the guiding hand of counsel *at every step in the proceedings*") (emphasis added); *see also King v. Koucouliotes*, 108 N.C. App. 751, 755, 425 S.E.2d 462, 464 (1993) (explaining one purpose of discovery is to sharpen factual issues for trial).

¶ 43 As Defendant asserts, discovery is a particularly pertinent stage to ensure the right to assistance of retained counsel in civil cases because depositions can be used at trial to impeach witnesses or even in place of witness testimony in certain circumstances. *See* N.C. Gen. Stat. § 1A-1, Rule 32(a) (listing ways depositions can

be used at trial or at hearings for motions). Rule 32(a)(3) is particularly significant because it allows the deposition of an organizational representative under Rule 30(b)(6) or 31(a) to be "used by an adverse party for any purpose, whether or not the deponent testifies at the trial or hearing" and Defendant here is an organization. *Id.*, Rule 32(a)(3). Thus, the assistance of retained counsel at depositions supports the core right to have retained counsel at trial.

¶ 44 While it extends to depositions, the due process right to the assistance of retained counsel in civil cases has limits. *See Adir International, LLC v. Starr Indemnity and Liability Company*, 994 F.3d 1032, 1040 (9th Cir. 2021) (explaining the "narrow scope of the due process right to retain counsel" by contrasting it to the Sixth Amendment's "much more robust" right to counsel and by looking to the "original public meaning of the term 'due process'").

¶ 45 We find the approach in *Danny B* to analyzing the boundaries of the due process right persuasive: "[A] court may not restrain a litigant's access to counsel without some substantial justification, and any such restraint should be narrowly tailored to respond to the concern that prompted it." *Danny B.*, 784 F.3d at 832. We find this test persuasive for two reasons. First, the examination's focus on a substantial interest and narrow tailoring involve a heightened scrutiny analysis common in the area of due process, albeit in a substantive rather than procedural sense. *See, e.g.*, *M.E. v. T.J.*, 275 N.C. App. 528, 549–51, 854 S.E.2d 74, 95–96 (2020)

(explaining the interrelation between substantive and procedural due process before explaining state action encroaching on fundamental rights triggers strict scrutiny analysis as part of substantive due process), *aff'd*, 2022-NCSC-23.[10]  Second, it ensures a case and fact-specific analysis of the due process issues.  *See Anderson v. Sheppard*, 856 F.2d 741, 749 (6th Cir. 1988) (explaining the importance of focusing on "the circumstances present in every case" when determining whether a litigant's due process rights to retain counsel were violated) (quotations and citation omitted).

¶ 46         Here, the issue is slightly more nuanced than just whether there is a due process right to retained counsel at depositions that we recognized above.  The trial court order does not ban litigants from having counsel at their depositions; it bans deponents from having counsel physically present in the same space as them.  In this case, the trial court's order banning retained counsel from being physically present with their client during depositions, without consideration of the circumstances of the particular deposition or preferences of the deponent and attorney involved in the

---

[10] *Danny B.*'s test blends two versions of heightened scrutiny.  It draws the substantial government interest from First Amendment law.  *See Malecek v. Williams*, 255 N.C. App. 300, 307, 804 S.E.2d 592, 598 (2017) (explaining content-neutral laws will be upheld if "narrowly drawn to further a substantial governmental interest . . . ." (quoting *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 294, 104 S. Ct. 3065 (1984))).  It draws the narrow tailoring requirement from strict scrutiny, which applies to substantive due process claims, among others.  *See, e.g. State v. Fowler*, 197 N.C. App. 1, 21, 676 S.E.2d 523, 540 (2009) ("If the right is constitutionally fundamental, then the court must apply a strict scrutiny analysis . . . ."); *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 2268 (1997) (explaining the Fourteenth Amendment protects fundamental liberty interests "unless the infringement is narrowly tailored to serve a compelling state interest") (quotations and citation omitted).

deposition, violates the Due Process Clause.

¶ 47    The reasoning supporting the due process right to retained counsel at depositions in general supports a narrower right to have counsel physically present. *Danny B.* emphasizes a "litigant's interest in communicating freely with counsel." 784 F.3d at 831. Further, *Potashnick* recognizes a litigant "requires the guiding hand of counsel at every step in the proceedings against him." 609 F.2d at 1118. In the context of depositions, an attorney may need to step in to object to the form or substance of questions or even to protect privileged material. The attorney's role in protecting privileged material is especially important because privileges aim to ensure privileged information is never revealed to the other side. *See* N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (stating privileged material is not discoverable). In these situations, an attorney's physical presence provides greater protection to a client than interacting remotely.

¶ 48    As Defendant contends, some deponents are more skilled at using the technology required for a remote deposition than others; some may require in-person assistance even to set up and operate the computer, camera, and microphone. Or a technological glitch could occur when counsel was trying to tell her client not to answer a question on the ground of privilege, thereby risking the privileged information is disclosed in spite of Rule 26(b)(1)'s protections from discovery. The attorney and deponent should normally be able to make their own decision of their

physical proximity during a deposition. An attorney may choose to participate apart from her client, but a court order forcing an attorney to participate remotely, physically apart from the client, implicates the client's due process rights.

¶ 49        Our conclusion is reinforced by persuasive caselaw from other jurisdictions that emphasize allowing a litigant's counsel to participate in-person in depositions helps ensure effective representation. In a pre-pandemic case, *Redmond v. Poseidon Personnel Services, S.A.*, the trial court found denying a corporate client "the opportunity to have its attorney present during the Rule 30(b)(6) deposition would inhibit defense counsels' duty to effectively and competently represent their foreign clients." 2009 WL 3486385, *3, 2009 U.S. Dist. LEXIS 104749, *10 (E.D. La. 2009). Similarly in *State v. Purdue Pharma L.P.*, issued in August 2020, close in time to when the dispute here occurred, the trial court relied on *Redmond*'s emphasis on the greater effectiveness of counsel in person in determining deponents "should still have access to in-person counsel if they wish." 2020 R.I. Super. LEXIS 69, *5–6 (R.I. Superior Ct. 2020). While these cases do not rely on the Due Process Clause specifically, they support the overall point that in-person access to counsel has benefits over counsel merely participating in depositions remotely apart from their clients. As a result, the trial court's order banning litigants' attorneys from assisting in person at all depositions, which could include depositions of their clients, without any consideration of the circumstances of the particular deposition, implicates

Defendant's due process rights as laid out above.

¶ 50    Given Defendant's due process rights are implicated here, we conduct the interest and tailoring inquiry adopted from *Danny B.* Presuming *arguendo* the COVID-19 pandemic constitutes a substantial interest, the trial court order barring attorneys from attending a deposition in person with their own clients and witnesses during otherwise remote depositions was in error because it was not narrowly tailored. The trial court could have used a less restrictive approach to achieve the same outcomes. *See Doe v. District of Columbia*, 697 F.2d 1115, 1120 (D.C. Cir. 1983) (explaining narrow tailoring means that there were no means less restrictive of a party's access to their lawyer); *see also Danny B.*, 784 F.3d at 832 (citing *Doe* when announcing its narrow tailoring requirement).

¶ 51    Here, Plaintiff's motion sought remote depositions due primarily to her counsel's personal health concerns. The trial court could have allowed remote depositions to account for the health concerns of Plaintiff's counsel without also preventing Defendant's counsel and parties who may not have the same health concerns from being together during a deposition. Further, to the extent Plaintiff's motion was based on travel restrictions, the trial court could have also made clear

there was no need for Plaintiff's counsel or witness to travel.[11] Again, that measure could have been taken without barring Defendant's counsel and willing witnesses from traveling to attend depositions together in the future. Since the trial court possessed less restrictive means at its disposal to achieve the same goals, it did not narrowly tailor its restriction on Defendant's due process rights to retained counsel and to have retained counsel physically present.

¶ 52 Further, the trial court erred because it failed to consider the specific circumstances of the particular witnesses and locations at issue. *See Anderson*, 856 F.2d at 749 (emphasizing the need to focus on "the circumstances present in every case" when determining whether a litigant's due process rights to retain counsel were violated). For example, Chicago had travel restrictions due to COVID-19 that made it impossible, in practice, for the attorneys to travel there because they would have had to quarantine for 14 days upon arrival. *See* Footnote 3, *supra* (explaining Chicago's COVID-19 travel restrictions at the time). In that situation, the trial court could allow a remote deposition, and it also would not have impacted Defendant's right to retained counsel because it was a deposition of one of Plaintiff's experts. However, the other deposition of a local doctor in Wake Forest would not have raised

---

[11] Defendant notes that Plaintiff selected her expert witness in Chicago prior to the pandemic. Plaintiff would have been aware of the potential expenses for travel when she selected the expert and the pandemic did not change this factor; the pandemic only made travel impractical at the time that deposition was scheduled in July 2020.

the same concerns because North Carolina did not have state or local travel restrictions for in-state residents such as the parties' counsel. *See Crawford v. Blue Ridge Metals Corporation*, 2020 WL 4001093, *2–3, 2020 U.S. Dist. LEXIS 125918, *5–7 (W.D.N.C. 2020) (federal case denying a litigant's motion for remote depositions in partial reliance on the fact that the deposition would comply with all state and local public health guidelines, which would therefore have not banned in-person depositions since North Carolina was in phase two of reopening). Further, none of the executive orders or emergency directives from the Chief Justice noted above restricted in-person depositions.

¶ 53        In addition to those two depositions, which were the basis of Plaintiff's motion, the trial court entered an order affecting "any and all depositions" in the case without regard for possible changes in circumstances arising from the COVID-19 pandemic.[12] The trial court's order came at a time before vaccines were available, but by Spring 2021 vaccines became available for any adults who wanted them. *E.g. Governor Cooper Announces Accelerated Timeline for Vaccination Eligibility*, North Carolina Governor Roy Cooper (Mar. 25, 2021), https://governor.nc.gov/news/press-releases/2021/03/25/governor-cooper-announces-accelerated-timeline-vaccination-

---

[12] Indeed, Defendant does not contend the trial court order would have presented any constitutional issue if it had addressed only the two depositions addressed by Plaintiff's motion, of Plaintiff's expert witnesses, even with the same limitations on attendance.

eligibility (announcing all adults would be eligible for vaccines by 7 April 2021).

¶ 54 The impact of COVID-19 on the operations of the courts has also changed in the time since the trial court entered its order. For example, when the trial court entered its order on 14 July 2020, sixteen emergency directives issued by the Chief Justice were in effect to address the impact of COVID-19 on the courts. Order of the Chief Justice Extending Emergency Directives 2 to 8 (29 June 2020) (extending emergency directives 2 to 8 until 29 July 2020); Order of the Chief Justice Extending Emergency Directives 9 to 16 (20 June 2020) (extending emergency directives 9 to 16 until 20 July 2020); Order of the Chief Justice Extending Emergency Directives 18 (29 June 2020) (extending emergency directive 18 until 24 July 2020). Less than a year later, the Chief Justice had revoked the final emergency directive. *See* Order of the Chief Justice Revocation of the June 7 Order (21 June 2021) ("No more Emergency Directives remain in place.").

¶ 55 Recently, the Chief Justice issued a proclamation that all judicial officials should "resume immediately full courthouse operations and administer justice without further delay as mandated by the North Carolina Constitution." Proclamation, Restoration of Full Court Operations, *supra*; *see also* Footnote 5, *supra* (providing full text of proclamation). The trial court could not be expected to foresee these developments, but it erred by restricting Defendant's right to the presence of retained counsel at *all* depositions without regard to the circumstances of a particular

deposition and without allowance for changes in the restrictions related to COVID-19.

¶ 56        Finally, as to its constitutional rights argument, Defendant argues "prejudice is presumed in this case." (Capitalization altered.) We agree. As *Danny B.* explained, denial of the right to assistance of retained counsel frustrates the right to counsel, which "is a right of the highest order of importance." 784 F.3d at 834. As such, prejudice "can fairly be presumed." *Id.* Given we have found the trial court order here failed the test from *Danny B.*, prejudice can be fairly presumed. On *de novo* review, the trial court erred in ordering the witnesses had to be physically separate from their attorneys during all depositions.

### IV.    Motion to Amend Discovery Scheduling Order

¶ 57        In addition to his constitutional argument, Defendant asserts the trial court erred by denying its motion to amend the Discovery Scheduling Order. We do not need to address this argument. The trial court's order denying the motion to amend the DSO to continue the scheduled trial was made "without prejudice to address these issues in the future." The DSO set the trial date for 8 February 2021, which has obviously passed due to the delay from this appeal. On remand and consistent with this opinion, the trial court will have to address the discovery and trial schedule again.

### V.    Conclusion

¶ 58     After *de novo* review, we hold the trial court erred by ordering counsel could not be in the physical presence of their own witnesses or clients during remote depositions, without consideration of the particular circumstances of the deposition's timing, location, or persons involved, because this restriction violates Defendant's due process right to retained counsel.

¶ 59     Because the trial date in the original Discovery Scheduling Order has already passed, we do not address Defendant's argument the trial court erred in denying, without prejudice, his motion to continue the trial date. On remand, the trial court must address the discovery schedule and trial date.

REVERSED AND REMANDED.

Judge TYSON concurs.

Judge DILLON dissents.

DILLON, Judge, dissenting.

Plaintiff commenced this malpractice suit in 2019. In July 2020, during the early days of the COVID-19 pandemic, the trial court entered an order, directing that depositions be taken remotely *and* that no counsel be allowed to be physically present with any deponent. The next month, in August 2020, Defendant appealed this order, specifically the directive prohibiting any counsel to be in the same room as the deponent. In December 2020, Plaintiff filed her motion to dismiss the appeal so that the matter could proceed in the trial court. The matter was ultimately heard by our Court in September 2021.

The majority concludes that Defendant's appeal, though interlocutory, affects a substantial right. The majority further concludes that the trial court's order should be reversed, contending that the order violates Defendant's due process rights. I disagree on both counts. My vote is to grant Plaintiff's motion to dismiss based on my conclusion that the discovery order is interlocutory and does not affect a substantial right (and I would not grant Defendant's PWC). Even if the order does affect a substantial right, I do not see how that right was forever lost by the order.

The majority cites numerous cases for the proposition that a party has a due process right to counsel at depositions. I do not disagree. But these cases are not relevant to this appeal, as there is nothing in the appealed order prohibiting Defendant's counsel to be present and fully participate in depositions, albeit remotely.

¶ 63    And I do not believe that the order's prohibition of Defendant's counsel to be physically present in the same room as any deponent violates Defendant's *due process rights*, which is the basis of Defendant's "substantive right" argument.

¶ 64    The majority recognizes that this issue is one of first impression in North Carolina. The majority then cites the *Redmond* case, a pre-COVID-19 case from a federal court in Louisiana, and the *Purdue* case, a 2020 case from Rhode Island, to support its position. *See Redmond v. Poseidon Pers. Servs., S.A.*, 2009 U.S. Dist. LEXIS 104749 (E.D. La. Oct. 19, 2009); *see also State v. Purdue Pharma L.P.*, 2020 R.I. Super. LEXIS 69 (R.I. Super. Ct. Aug. 18, 2020). The majority, though, fully recognizes that neither case was decided on due process grounds. Further, in *Purdue*, the court recognized that there was no absolute right to have counsel present, leaving open the door for the trial court to require depositions to proceed if there was some pandemic-based barrier to prevent counsel from being able to be physically present in the deponent's location. *Purdue*, 2020 R.I. Super. LEXIS 69, at \*6. Of *Redmond*, another federal court during the height of the COVID-19 pandemic found the pre-COVID-19 *Redmond* decision distinguishable:

> The Court is not blind to nor is it ignoring the very real challenges involved in conducting remote video depositions in a case like this with so many parties and lawyers. But unless the Court is going to stay all depositions that cannot proceed by agreement (whether in-person or remotely) until there is a cure or a vaccine for COVID-19, or something approaching so-called herd immunity, which it is unwilling to do on a blanket basis, the parties and their

counsel are going to have to . . . adapt, make some choices,
be creative, and compromise in this and every other case in
which they are involved during this time without modern
precedent.

*WCR, Inc. v. W. Can. Plate Exchanger, Ltd.*, 2020 U.S. Dist. LEXIS 236820, at *7

(S.D. Ohio Dec. 16, 2020) (quoting *In re Broiler Chicken Antitrust Litig.*, 2020 U.S.

Dist. LEXIS 111420, at *5 (N.D. Ill. June 25, 2020)).

¶ 65          Even if there is some implication of due process rights, there is no showing that

the order risks this substantial right being lost without an immediate appeal.  I note

the majority's concern of some risk that a deponent might divulge confidential

information without their attorney being in the same room.  However, other courts

have considered similar issues and have demonstrated that a party is not unduly

prejudiced by not having counsel in the same room to defend a deposition:

> Plaintiffs argue that they should have the option to be in
> the same room with their individually named clients or any
> willing third-party witness while the deposition is taken.
> Even in those situations, Plaintiffs have made no showing
> of prejudice or hardship to counsel that cannot be overcome
> when participating remotely along with all other
> participants. While the Court appreciates the role of
> counsel in defending a witness during a deposition,
> counsel's role during a deposition is limited. Defense
> counsel can carefully listen to questions and make
> appropriate objections, and they can still do this remotely.
> The parties are encouraged to develop protocols to address
> any concerns with the process for making objections or
> instructing a witness not to answer. For example, other
> courts have addressed the issue of how to allow for a
> witness to pause before answering questions when being
> deposed remotely to allow for their attorney to consider

whether to lodge any objections. Further, remote
deposition protocol can provide for more frequent breaks if
needed, and counsel can connect with their clients or
witnesses in a private virtual "breakout room" or by a
separate remote connection during those breaks.

*H & T Fair Hills, Ltd. v. All. Pipeline L.P.*, 2020 U.S. Dist. LEXIS 167074, at *9-10

(D. Minn. Sept. 14, 2020) (internal citation omitted). In *In re Broiler*, the court

described a process which could be followed to ensure that confidential information

would not be accidentally divulged by a deponent:

> [T]o guard against a witness answering a question when
> the technology prevents the witness's counsel, who like the
> witness is participating in the deposition remotely and
> from a different location, from lodging an objection or
> instructing the witness not to answer the question, the
> parties might consider adopting a convention that would
> allow a witness to answer a question only after the lawyer
> defending the deposition says the witness can answer. A
> simple, "you may answer" would suffice. The Court is
> confident the parties can come up with other conventions
> that can make the taking and defending of remote
> deposition more palatable.

*In re Broiler*, 2020 U.S. Dist. LEXIS 111420, at *85 n.3.

¶ 66        Though not directly on point, the Federal Rules of Civil Procedure expressly

allow a court to order that a deposition be taken by telephone. Fed. R. Civ. P. 30(b)(4).

In a federal case from North Carolina, a court held that "[i]n civil cases, the better

rule is that a request for a telephonic deposition should not be denied on the mere

conclusory statement that it denies the opportunity for face-to-face confrontation."

*Jahr v. IU Int'l Corp.*, 109 F.R.D. 429, 432 (M.D.N.C. 1986).

Reaching the merits of the appeal, for the reasons stated above, I do not believe that the trial court's order violated Defendant's due process rights. And while I might not have entered a similar order if I were the trial judge, I do not believe Defendant has adequately shown how the trial court abused its discretion in entering the order.

In conclusion, I simply do not see a substantial right, much less one that would have been forever lost without an immediate appeal, to justify essentially putting this case on hold for over a year and a half to resolve this discovery issue.